88 So.2d 307 (1956)
Leta Margaret SPARK, as one of the Executrices of the Last Will and Testament of Ella T. Farmer Steding, also known as Ella Therese Farmer Steding, deceased, Appellant,
v.
DeVERA Ellen CANNY, also known as Mrs. DeVera E. Canny, and First Federal Savings and Loan Association of Miami, a corporation, Appellee.
Supreme Court of Florida, En Banc.
June 13, 1956.
Rehearing Denied June 26, 1956.
*308 Emma Roesing and Mattie Belle Davis, Miami, for appellant.
Nestor Morales, Miami, for appellee.
ROBERTS, Justice.
The decree here appealed from was entered in a suit to determine the rights of the litigants to a $20,000 savings account in the First Federal Savings and Loan Association of Miami. The litigants are two of the three surviving daughters of Mrs. Ella Farmer Steding, deceased. Mrs. Spark, plaintiff below and appellant here, is one of the executrices of the last will and testament of Mrs. Steding; and Mrs. Canny, defendant below and appellee here, appeared on the records of the First Federal Savings and Loan Association as the joint owner, with Mrs. Steding, of the savings account in question. Mrs. Steding's will named Mrs. Spark, Mrs. Canny and the other daughter as residuary legatees, share and share alike, of her estate, after making two minor bequests to other persons. Except for the savings account in question, Mrs. Steding's estate at the time of her death consisted of corporate stock valued at $20,000 and a $10,000 U.S. Savings Bond.
The savings account was opened by Mrs. Steding (then Mrs. Farmer) in 1935 and was carried in her individual name for many years. In 1938 she also rented a safety deposit box in the same bank. She did not have a checking account, and it was her custom to cash dividend and interest checks and place the funds in the safety deposit box, from which she withdrew them as needed.
Mrs. Steding was 83 years of age at the time of her death. She was hospitalized in November of 1953 for a week and, according to the witnesses, was never really well after that time. She was taken to the hospital again in April of 1954, where she died on May 6, 1954. All three of her daughters lived in other states. Mrs. Canny came to Florida to stay with her mother on December 17, 1953; and on December 18, 1953, Mrs. Steding arranged for Mrs. Canny to *309 have access to the safety deposit box. On January 5, 1954, Mrs. Steding changed the savings account from her individual name to a joint account in the names of herself and Mrs. Canny or the survivor. It is conceded that the instruments executed at the bank were sufficient to establish a joint account with the right of survivorship, as between the bank and the parties hereto; but as between the parties themselves a different situation may prevail, as is more fully discussed hereafter.
The bank's records show that Mrs. Steding entered the safety deposit box for the last time on January 13, 1954; that, beginning January 25th, Mrs. Canny entered it four times before her mother's death on May 6th; and that, between May 7th and May 15th, she entered it five times. There was no cash in the safety deposit box at the time the estate was inventoried. Neither Mrs. Steding nor Mrs. Canny made any withdrawals from the savings account during the time it was in their joint names. However, three days after Mrs. Steding's death, Mrs. Canny withdrew $1,500 from the savings account and had the balance transferred to her individual name. She used the $1,500 to pay her mother's hospital and funeral expenses and thereafter filed a claim against the estate in the amount of approximately $1,750 to reimburse her for these and other bills she had paid.
The theory of Mrs. Spark's complaint was that Mrs. Steding gave Mrs. Canny access to the safety deposit box and changed her savings account to a joint account with Mrs. Canny for convenience only; that it was Mrs. Steding's purpose and announced intention to establish the joint account solely to enable Mrs. Canny to withdraw funds to pay for Mrs. Steding's living and medical expenses during her last illness and her funeral expenses after her death, with the remainder to be divided equally among her three daughters; that it was never Mrs. Steding's intention to make a gift of any portion of such savings account to Mrs. Canny; and that to uphold Mrs. Canny's asserted claim to the savings account, as the surviving joint owner thereof, would not only be a betrayal of the confidence reposed in her by their mother, but would also constitute a fraud against the plaintiff and the other daughter, as the residuary legatees (with Mrs. Canny) under their mother's will.
Mrs. Canny's answer denied that such was Mrs. Steding's intention and asserted that the "agreed purpose of the decedent as expressed in the documents pertaining to the account, was that a joint estate be created with full right of survivorship."
Testimony on the issues thus made was submitted to a Special Master (who did not, however, have authority to make findings of fact and recommendations of law), the issues were decided adversely to the plaintiff by the Chancellor on the basis of the recorded testimony, and the cause was dismissed. In his decree, the Chancellor commented that "It appears that all conversations of the decedent with witnesses in regard to her funds were of a general nature in conformity with the will of the decedent," but he made no specific finding of fact as to the donative intent of Mrs. Steding. The decree found that the bank documents establishing the joint account were sufficient to establish a joint account with right of survivorship, under the authority of Crabtree v. Garcia, Fla., 43 So.2d 466; Crawford v. McGraw, Fla., 61 So.2d 484, and In re Brandle's Estate, Fla., 65 So.2d 27, and that "there was no fraud or wrongdoing shown by the Defendant, DeVera Ellen Canny which would alter the above joint account agreement." Mrs. Spark has appealed from the decree dismissing the cause.
It may be conceded that there is nothing in the evidence to show that Mrs. Canny was guilty of any fraud or wrongdoing in the setting up of the joint account; nor is there any direct evidence as to whether Mrs. Canny knew what her mother's intentions were in establishing the joint account. But as we read the testimony (and it should be noted that our opportunity to evaluate the evidence is the same as that of the Chancellor, since he did not hear the witnesses) we think it shows conclusively that, in establishing the joint account with right of survivorship, Mrs. Steding had no *310 intention of doing anything more than is here contended for by Mrs. Sparks  that is, establishing it solely as a matter of convenience and without any donative intent in favor of Mrs. Canny. Mrs. Steding's husband (whom she married in 1950), her son and her daughter-in-law (none of whom were "interested parties" within the meaning of the Dead Man's Statute) all testified to this effect. Her son testified that when he was trying to persuade her to have a private nurse at the hospital, and offered to pay for one himself, she said that she had enough money to see her through and that she had had "to get somebody to go down to the bank and withdraw the money from the savings account. I've had to let DeVera [Mrs. Canny] sign for me so that she could get enough out of there to pay any expenses," and that Mrs. Canny "has promised me faithfully to see that the girls get their third and to see that things work out the way that I have always wanted them to." Mrs. Steding's husband testified that during January, 1954, Mrs. Steding discussed with him and Mrs. Spark the account in the First Federal and told them that Mrs. Canny had charge of it so that she could "go to the bank and pay the money and pay the hospital and doctor and whatever was left would go to the three girls, after all the expenses were paid." There was other testimony of these witnesses along this same line, and Mrs. Steding's daughter-in-law testified to the same effect. It was also shown that, while Mrs. Steding made occasional trips to the doctor during her last illness and sometimes went out to dinner or for a drive in the car, it was an effort for her to get out of bed. In our opinion, the evidence showed conclusively that Mrs. Steding established the joint account solely as a matter of convenience and with no intention of giving to Mrs. Canny the funds on deposit therein.
It is not clear from the decree whether the Chancellor gave any consideration to the question of the donative intent of Mrs. Steding. But in view of the fact that the decree specifically found only that (1) the bank instruments were sufficient to create a joint account with right of survivorship, and (2) there was no fraud or wrongdoing on the part of Mrs. Canny "which would alter the above joint account agreement," we think it may validly be assumed that the Chancellor gave no consideration to Mrs. Steding's "donative intent" in deciding the cause. And the argument made here on behalf of Mrs. Canny in support of the decree confirms this assumption.
It is contended here on behalf of Mrs. Canny that the banking instruments constituted a contract binding on Mrs. Steding's heirs and personal representatives, in the absence of a showing of fraud or misconduct on the part of Mrs. Canny. It is contended equally strongly in behalf of Mrs. Spark that a donative intent on the part of Mrs. Steding was necessary to the establishment, with her own funds, of a joint bank account with right of survivorship. This question has not heretofore been directly decided by this court, so far as we can tell.
In upholding the right of a survivor to take the balance of a joint bank account upon the death of the joint owner with whose funds the joint bank account was established, the courts of other jurisdictions have followed one or the other of the following theories: (1) that a joint tenancy with right of survivorship was created in the deposit; (2) that there was a gift of the deposit to the surviving claimant; (3) that a trust was created for the use and benefit of the surviving claimant; (4) that the bank memoranda in regard to the particular deposit involved created a contract between the original owner of the funds on deposit and the bank, for the benefit of the surviving claimant. See Webster v. St. Petersburg Federal Savings & Loan Ass'n, 1945, 155 Fla. 412, 20 So.2d 400, for a discussion of the application of each of these theories to a claim by a surviving joint account holder. See also the cases in the annotation in 135 A.L.R. beginning at page 993 for decisions from other jurisdictions following one or the other of the theories.
This court apparently follows the "joint tenancy" theory, since it was said in Crawford v. McGraw, Fla. 1952, 61 So.2d 484, *311 487, that "The opening of a joint bank account with the intention of creating a right of survivorship is a means of creating a joint estate in personal property." and most of the cases involving a claim by the survivor to a joint bank account heretofore decided by this court were principally concerned with the question of whether the banking memoranda establishing the joint account sufficiently complied with Section 689.15, Fla. Stat. 1955, F.S.A., which abolished the right of survivorship in joint tenancies except where "the instrument creating the estate shall expressly provide for the right of survivorship * * *." See Crawford v. McGraw, supra, 61 So.2d 484; Crabtree v. Garcia, Fla. 1949, 43 So.2d 466; In re Brandle's Estate, Fla. 1953, 65 So.2d 27.
But this court has never held that the lack of donative intent of a deceased joint account holder, with whose funds the joint account was established, could not be shown to defeat a claim by the surviving joint account holder. On the contrary, the court emphasized in Crawford v. McGraw, supra, 61 So.2d 484, 488, that "in both the Garcia case [Crabtree v. Garcia, supra, 43 So.2d 466] and this case it was undisputed that the intention of the deceased and the co-depositor was to establish a joint account with the right of survivorship." And in Webster v. St. Petersburg Federal Savings & Loan Association, supra, 20 So.2d 400, 403, this court pointed out that "in the great majority of the cases [from other jurisdictions] where the funds were furnished entirely by one party there appeared in the transaction involved some element of present gift, trust, or joint ownership which might well have upheld the claim of a survivor upon the gift, trust, or joint-ownership theory, without regard to the contract theory."
It is true, as contended on behalf of Mrs. Canny, that the rules relating to gifts inter vivos cannot be strictly and literally applied in determining whether a joint bank account with right of survivorship has been established. Thus, the very nature of a joint bank account is such that one essential element of a gift inter vivos is missing  that of surrender of dominion and control by the donor  since each party has an equal right to withdraw the funds on deposit. See Hagerty v. Hagerty, Fla. 1951, 52 So.2d 432. Nor is the rule as to "delivery" of the gift applicable in this situation. This is so because the thing given is not the money, in specie, on deposit in the joint bank account; it is a gift of an interest in the funds on deposit equal to that of the donor. But we think that the third essential of a gift inter vivos  that of donative intent  is just as relevant to the question here under discussion as it is in cases involving the establishment of a bank account by a person with his own funds in the name of another. Cf. McKinnon v. First Nat. Bank of Pensacola, 77 Fla. 777, 82 So. 748, 6 A.L.R. 111, and King v. King, Fla. 1951, 55 So.2d 181; or in the establishment of a joint bank account by a husband in his and his wife's names, Cf. Jones v. Ferguson, 150 Fla. 313, 7 So.2d 464, and Hagerty v. Hagerty, supra, 52 So.2d 432.
A case very similar on its facts to the instant case is Murray v. Gadsden, 91 U.S. App.D.C. 38, 197 F.2d 194, 203, 33 A.L.R.2d 554. There, the federal court discarded the "contract theory" and held that a joint estate in a bank account "is not established unless it is the result of a gift or a trust as a condition precedent." (The principal question in the Murray case was whether parol evidence was admissible to show the intention of the donor in establishing the joint account, and it might be noted that no complaint was made here as to the admissibility of the testimony concerning Mrs. Steding's donative intent.) We think this is the sounder and more logical rule than the "contract theory" and one which is entirely in accord with the previous decisions of this court respecting joint bank accounts with right of survivorship.
We hold, therefore, that where a joint bank account with right of survivorship is established with funds of one person, as here, a gift of the funds remaining in the account at the death of the creator of the joint account is presumed; but such presumption is rebuttable and may be overcome by clear and convincing evidence to *312 the contrary. Cf. Seymour v. Seymour, Fla. 1956, 85 So.2d 726. Since the evidence in the instant case showed conclusively that the joint bank account was established by Mrs. Steding solely for her own convenience and without donative intent, it was error to hold that Mrs. Canny was entitled to the balance on deposit in the account at Mrs. Steding's death.
For the reasons stated, the decree appealed from should be and it is hereby
Reversed.
DREW, C.J., and TERRELL, HOBSON, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., dissents.