119 So.2d 78 (1960)
George J. SULLIVAN, As Administrator C.T.A. of the Estate of Mary E. Sutton Sullivan, Deceased, Appellant,
v.
CHASE FEDERAL SAVINGS AND LOAN ASSOCIATION, a Florida Corporation, and Selena M. Poster, Appellees.
No. 59-418.
District Court of Appeal of Florida. Third District.
March 10, 1960.
Rehearing Denied April 18, 1960.
*79 Fuller Warren and Ellen Morphonios, Miami, for appellant.
Evans, Mershon, Sawyer, Johnston & Simmons, Miami, for Selena M. Poster, appellee.
PEARSON, Judge.
The appellant, George J. Sullivan, the administrator C.T.A. of the estate of Mary E. Sutton Sullivan, deceased, appeals from a summary final decree wherein it was held that the defendant, Selena M. Poster, was the owner of a certain savings account. This summary final decree was entered in a cause for declaratory decree brought by the administrator.
There is no question raised as to procedure or the propriety of entering a summary decree under the circumstances of this case. The sole question raised is whether or not the summary decree was properly entered for Mrs. Poster rather than for the appellant.
The account in question was originally opened by Edgar S. Sutton, a former husband of the deceased. On January 21, 1950, Mr. Sutton had changed the account into a joint account in his and his wife's name. Mr. Sutton died and Mary E. Sutton, his wife, became the sole owner of the funds in this account. Thereafter on October 3, 1957, Mary E. Sutton changed the account into a joint account in her name and in that of Selena M. Poster with right of survivorship. The depositions and affidavits clearly showed that Mrs. Sutton wanted Mrs. Poster to have the balance in the account upon her death because Mrs. Poster had been a constant and close friend. Thereafter Mary E. Sutton married George J. Sullivan, but the account remained unchanged. Upon the death of Mary E. Sutton Sullivan her administrator brought the action in which the summary final decree was entered.
The controlling question is one of law. It arose in the following manner. The complaint filed by the administrator was for a decree determining whether he, as administrator, or the defendant, Mrs. Poster, was entitled to the amount in the joint account. The answer of Mrs. Poster admitted the existence of the account and alleged that she was the survivor and the sole owner. Paragraph numbered 9 of her answer raised the question of law to be decided by the court.
"That she denies the allegations of Paragraph 9 of said complaint as the same are stated and affirmatively alleges that said account or the funds deposited *80 therein became her sole property by operation of law upon the death of said decedent; that the said decedent created said joint account with right of survivorship in the names of Mary Sutton and Selena M. Poster with the intent to make a gift to Selena M. Poster of the funds on deposit upon the decedent's death." [Emphasis added]
The summary final decree was entered upon the basis of the pleadings, the depositions of Mr. and Mrs. Colvin B. Williams, who are relatives of the deceased, and the affidavits of Mrs. J.G. Shulenberger, a neighbor of the deceased, and Dr. Russel H. Poster who is the husband of Mrs. Poster.
In each instance the affidavits and depositions sustained the allegations of paragraph "9" of the answer, that the decedent created the joint account with the right of survivorship in the names of Mary E. Sutton and Selena M. Poster with the intent to make a gift to Selena M. Poster of the funds on deposit upon her death. Nowhere in the record is there any suggestion that the deceased ever intended to make an inter vivos gift of the amount in the account.
The Supreme Court of Florida has determined that where a joint bank account with right of survivorship is established with the funds of one person, a gift of the funds remaining in the account at the death of the creator of the joint account is presumed, but that such presumption may be rebutted. Spark v. Canny, Fla. 1956, 88 So.2d 307. The presumption has been rebutted in this case by the pleadings, depositions and affidavits to the effect that the sole intent of the creator was to make a gift effective only upon the death of the creator. Therefore the establishment of the joint bank account was an ineffectual attempt to do that which could only be accomplished by last will and testament. Since the evidence in the instant case shows conclusively that the joint bank account was established by Mrs. Sullivan as an attempted testamentary devise, it was error to hold that Mrs. Poster was entitled to the balance in the account at Mrs. Sullivan's death. Spark v. Canny, supra; Murray v. Gadsden, 91 U.S.App.D.C. 38, 197 F.2d 194, 203, 33 A.L.R.2d 554.
The summary final decree is reversed and the cause remanded for the entry of a decree in accordance with this opinion.
Reversed.
HORTON, C.J., concurs.
MILLEDGE, STANLEY, Associate Judge (dissenting).
I am unable to agree with the court's view of this case and since my own view is held with conviction I feel impelled to state it, however tedious.
My view is that the court has not followed the full implications of Spark v. Canny, Fla. 1956, 88 So.2d 307, 311. If the nature of the transaction here involved were before this court as a case of first impression the transaction itself would raise many questions difficult to answer. These questions troubled the Supreme Court. The creator of the joint account with right of survivorship is not by this act relinquishing control. Control is not lost until the death of the donor of the account. As the Supreme Court explicitly noted, this circumstance in the Spark case, which is at odds with the traditional idea of what constitutes a gift, does not prevent the transaction from being treated, presumptively, as a gift inter vivos. This is a good example, I take it, of a court refusing to be prevented by a definition from working out a satisfactory solution without doing violence to basic concepts. In the transaction involved in the Spark case and in this one the present act of the donor in creating the account is the operative fact of transfer to the donee. The death of the donor, nevertheless, is a highly significant fact since it determines with finality the control previously capable of exercise by the donor of destroying the subject of the gift by withdrawal. *81 The death of the donor measures the extent of the gift. The inter vivos act is a gift of what? The funds first placed on deposit? No, since these may be withdrawn or added to. The Supreme Court's answer is that it is a present gift "of the funds remaining in the account at the death of the creator of the joint [bank] account." The Spark case recognizes that even though legal relations change on the death of the donor, this does not of itself prevent a donor from disposing of her property during her lifetime, the finality and extent of the gift to be measured by the value of the account at the time of death. The presumption of an inter vivos gift is present even in the face of the death contemplated in creating a survivorship account. The fact of death and its legal significance is an integral part of the totality of facts giving rise to the presumption of an inter vivos gift.
What then, must be the nature of the evidence sufficient to be the "clear and convincing" proof necessary to overcome the presumption? Can evidence of hearsay statements by the donor to the effect that she was aware of the great legal significance of her death, as a matter of law, be evidence of this quality? This is not evidence showing an intent to do something other than the nature of the account imports. It is quite consistent with the presumption. Can a fact which is an integral part of the facts creating the presumption be a fact which defeats the presumption? At the very least must not the facts relied on be inconsistent with the intention presumed from the form of the transaction? In the Spark case the facts held to overcome the presumption had that quality. The facts were that the creator of the account intended merely to permit her daughter, as a matter of convenience, to withdraw money to meet the expenses of the illness of the mother, too ill to do this for herself.
In the light of the foregoing observations it remains to examine the evidence produced by Mrs. Poster but relied on by the administrator.
Mr. Williams, decedent's brother, who together with his wife were visiting in the decedent's home said, "It took place at the breakfast table on the morning of November 14, 1957. She, my wife, and I were discussing various things at the table and she brought up the subject of finances and she said that she had this joint bank account over at Miami Beach with Mrs. Poster, and should anything happen to her this money should go to Mrs. Poster as a gift, not to pay for any of her expenses as she had money otherwise that she could use."
This statement would seem to indicate Mrs. Sullivan intended that the money should go as a gift of the funds remaining in the account on her death.
Mrs. Williams put the same conversation slightly different. "Mary (Mrs. Sullivan) told us that she had this joint bank account at a Miami Beach Bank, and should anything ever happen to her she wanted Selena (Mrs. Poster) to have it because she had always been the closest friend that she ever had, and she had other money that would take care of any bill that might arise." Although the word "gift" is not used it is clear Mrs. Sullivan intended a disposition of the funds on deposit upon her death.
A friend, Mrs. Shulenberger, deposed that during her last illness Mrs. Sullivan told her that Dr. and Mrs. Poster were not in her will "but I have taken care of it in another way." This would indicate that Mrs. Sullivan apparently intended (which was not apparent from the conversation but what must have been in her mind in light of the facts presented here) that they be the recipients of the funds remaining in the account on her death.
Dr. Poster, the husband of Selena Poster, said, "One day in October of 1957, Mrs. Sullivan stopped over at our residence. I was lying on the couch * * * Mrs. Sullivan took from the handbag a joint signature card for a bank account at the Chase Federal Savings and Loan Association. *82 She told Mrs. Poster that she intended to put her in her will but had decided not to since wills could be broken. She stated, however, that she had investigated at the bank and had been advised that joint bank accounts could not be broken. Mrs. Sullivan asked Mrs. Poster to sign the signature card which she had. A few days later Mrs. Sullivan again stopped over at our residence and this time she had with her a joint bank book in the name of herself (Mary E. Sutton at that time) and Mrs. Poster. She stated that Mrs. Poster would be about $10,000 richer at the time of her death."
Such statements as the one in the preceding sentence and "If anything should happen to her" that this money should go to Mrs. Poster as a "gift" are perfectly consistent with the idea that she intended a present gift, recognizing the effect that death would have upon this present gift.
The problem is that these statements are also perfectly consistent with the idea that Mrs. Sullivan intended a testamentary disposition of property. Because of the fact that death is operative to change the relationship in either case any reference to death is, standing alone, ambiguous. But when only ambiguous statements exist, the presumption of the Spark case stands unrebutted.
The majority of the court attribute some significance, favorable to their conclusion in paragraph nine of Mrs. Poster's answer which is that, "the said decedent created said joint account with right of survivorship in the names of Mary Sutton and Selena M. Poster with the intent to make a gift to Selena M. Poster of the funds on deposit upon the decedent's death." (Emphasis of majority opinion) I do not agree that this is a pleading admission of a testamentary intent. "Upon decedent's death" relates to the time at which the extent of the gift, accomplished on making the deposit, may be measured, not to the effective date of the transfer. I see no real difference between the pleader's words and the words of the Supreme Court in the Spark case relating to the presumptive inter vivos gift of the "funds remaining in the account at the death of the creator of the joint account."
As I view the evidence the most that could be said favorable to the administrator is that Mrs. Sullivan's words were ambiguous. They might be referable to a testamentary intent. They are at least as referable to an inter vivos gift. As a matter of law this cannot be held to constitute clear and convincing evidence to overcome the presumption of a gift. It did not seem clear and convincing to the trial judge. I would affirm.