189 So.2d 380 (1966)
Robert MAIER, As Executor of the Estate of Edward A. McGrath, Deceased, Appellant,
v.
Ruth C. BEAN, Appellee.
No. 6529.
District Court of Appeal of Florida. Second District.
August 3, 1966.
Rehearing Denied September 7, 1966.
George F. Wilsey, of Fisher & Wilsey, St. Petersburg, for appellant.
W.E. Wight, Jr., of Roess, Wight & Burford, St. Petersburg, for appellee.
*381 ALLEN, Chief Judge.
Plaintiff below appeals from a final decree, which declared defendant the exclusive owner of a joint savings account.
In July, 1959, Edward A. McGrath and his wife of 34 years, Jane A. McGrath, opened a savings account at First Federal Savings and Loan Association of St. Petersburg. From April, 1963, to October 5, 1965, the account balance was exactly $10,000.00, and there was no activity therein except for periodic credit and withdrawal of the account's dividends. Jane McGrath died July 10, 1964. The account stood in the name of Edward McGrath only until October 5, 1964.
In June, 1959, defendant Ruth Bean took an apartment across the street from where the McGraths were then living. In addition to being neighbors, Miss Bean and the McGraths became good friends.
In May or June, 1964, the McGraths bought a trailer, located in a trailer park in the northern part of St. Petersburg. After Jane McGrath's death, Ruth Bean adopted the practice of not only visiting with Edward McGrath almost every night after she got through work, but also spending considerable time with him on weekends. Toward the middle of September, Edward McGrath mentioned to Ruth Bean that he planned to change his will. On September 16, 1964, he drew up a new will and made Ruth Bean the beneficiary of his trailer.
On October 2, 1964, while Ruth Bean was again visiting with McGrath at his trailer, he discussed with her his financial circumstances and asked her to marry him; she accepted. McGrath not only advised her of his account at First Federal Savings and Loan, but also told her of his other savings account at Home Federal. He indicated he would have both of these accounts changed into their joint names. In explanations of this intent, McGrath stated he wanted to share with her his life and his worldly possessions.
On Monday, October 5th, McGrath and Ruth Bean went to the Madeira Beach office of First Federal to change the savings account into a joint account with right of survivorship. The branch manager, William Zeunges, had McGrath sign a Notice of Change of Ownership form, and had both McGrath and Ruth Bean sign a signature card. Mr. Zeunges then posted an insert on the face of the passbook indicating the creation of a joint account with right of survivorship in the names of Edward McGrath and Ruth C. Bean.
Mr. Zeunges explained to Mr. McGrath that the use of the account by Miss Bean could "establish the fact that it was her money as well as his," that is, "that it would be both their accounts." Pursuant to this suggestion, McGrath gave Miss Bean $398.00 cash. She then deposited this amount in this joint account.
After Miss Bean made the deposit, she handed the passbook to Mr. McGrath. McGrath asked her if she did not want to keep it. Miss Bean said, "No, I don't. You keep it, because you are the man of the house, or will be the man of the house. * * * And you have a place to lock it." She further testified he had a lock box in his mobile home and she had no place to lock it in her apartment.
On another occasion, McGrath took the account book out of the lock box and asked Miss Bean if she did not want to keep it. Miss Bean kept it for a few minutes and said, "No, Eddie, it won't be long until I will be over here. Let's keep it here."
A withdrawal of $100.00 on October 22, 1964, was the only transaction in the account before McGrath's death. Miss Bean drove him to the bank that day. McGrath drew out the money and gave half of it to Miss Bean.
On October 28th McGrath died. Sergeant Kelly took custody of the lock box. The Sergeant testified that Miss Bean identified the passbook as hers, but that *382 she could not have it as he had no authority to release it to her.
The Executor filed suit to recover the money in the account. Before the final hearing, plaintiff filed requests for admission asking, inter alia, whether a $398.00 deposit in the account, purportedly made by the defendant on the advice of the bank, was in fact money given the defendant by the decedent for this purpose. Defendant objected to the requests on the grounds that they were improper in the absence of a waiver by the plaintiff of his protection under the Dead Man's Statute. The objection was overruled by the court on the ground that such requests by plaintiff did constitute such a waiver.
On final hearing, the court, sitting without a jury, found that the joint account with right of survivorship was established with intent of Mr. McGrath, not to make a testamentary disposition of the funds in the account, but rather, in view of his forthcoming marriage to the defendant, intended to make a present gift in contemplation of life.
Appellant-plaintiff presents three points on appeal; discussion of the last two will take place first.
Did the creation of a joint account with right of survivorship pass an inter vivos gift to the defendant-appellee, Miss Bean?
In upholding the right of a survivor to take the balance of a joint bank account upon the death of the joint owner with whose funds the joint bank account was established, Florida courts follow the "joint tenancy" theory. Chase Federal Savings and Loan Association v. Sullivan, Fla. 1960, 127 So.2d 112; Spark v. Canny, Fla. 1956, 88 So.2d 307.
Crawford v. McGraw, Fla. 1952, 61 So.2d 484, 487, states:
"* * * the opening of a joint bank account with the intention of creating a right of survivorship is a means of creating a joint estate in personal property. * * *"
Justice Robert's opinion in Spark v. Canny, supra, contained the following comment pertinent to the gift facet of this problem:
"It is true, as contended on behalf of Mrs. Canny, that the rules relating to gifts inter vivos cannot be strictly and literally applied in determining whether a joint bank account with right of survivorship has been established. Thus, the very nature of a joint bank account is such that one essential element of a gift inter vivos is missing  that of surrender of dominion and control by the donor  since each party has an equal right to withdraw the funds on deposit. See Hagerty v. Hagerty, Fla. 1951, 52 So.2d 432. Nor is the rule as to `delivery' of the gift applicable in this situation. This is so because the thing given is not the money, in specie, on deposit in the joint bank account; it is a gift of an interest in the funds on deposit equal to that of the donor. But we think that the third essential of a gift inter vivos  that of donative intent  is just as relevant to the question here under discussion as it is in cases involving the establishment of a bank account by a person with his own funds in the name of another. * * *" (Emphasis added.) 88 So.2d p. 311.
In other words, the theory that the object or indispensable document had to be in actuality delivered and accepted has, at least since the Spark case, been discarded.
What primarily needs to be shown in these situations is the donor's intent to give the donee a present right of ownership of a one-half undivided interest in the account.
Once, however, the joint bank account with right of survivorship is established with the funds of one person, a gift of the funds is presumed. Spark v. Canny, supra.
*383 It is stated in North Shore Beach v. Shea, Fla.App. 1963, 148 So.2d 60, 63:
"In the case of Chase Federal Savings and Loan Ass'n v. Sullivan, Fla. 1960, 127 So.2d 112, the Supreme Court held that it had been established that the joint account was created by the decedent solely with the intention that the decedent's friend, as survivor, should have the remaining funds in the account at the time of decedent's death. However, the presumption that decedent ever surrendered, or intended to surrender an equal right to withdraw funds on deposit during her lifetime, or that the friend accepted an interest in such funds during the lifetime of decedent, had been rebutted. * * *"
This presumption, of course, is rebuttable and must be overcome by clear and convincing evidence. Spark v. Canny, supra; North Shore Bank v. Shea, supra.
This discussion leads to the third point, whether there was sufficient evidence to support the chancellor's decree, and whether the evidence clearly rebutted the above presumption of gift.
There are at least five instances of McGrath's intent to give Miss Bean a present interest in the account.
The first instance is on October 2nd when he advised her that he was going to change the account at First Federal into a joint savings account. He advised her, "I want to share. * * * I want to share my life with you and I want to share everything I have with you." This idea of sharing certainly did not indicate any testamentary purpose.
The second evidentiary matter was the testimony of William Zeunges:
"Q. This was his desire, to see that she would receive the money if he died?
"A. Not specifically if he should die. Actually his intent would be to see that she would have no problem getting this money at any time." (Emphasis added.)
The third instance came out during cross-examination of William Zeunges concerning the difficulty which Miss Bean might have in case something should happen to Mr. McGrath before they were married.
"Q. And what did you tell him?
"A. I told him there were  before they were married, there could be a problem, in case something should happen to McGrath.
"Q. Did you explain to him what the nature of the problem would be?
"A. I said there might be a question as to who owned the account.
"Q. Did you make any suggestion as to how the problem might be concluded or obviated?
"A. Yes, I said it may have been well for her to use the account.
"Q. Why would this make any difference? Did you explain that to him?
"A. To establish the fact that it was her money as well as his. (Emphasis added.)
"Q. And you told this to him?
"A. Yes.
"Q. That was the fact that it would be both their accounts? (Emphasis added.)
"A. Right."
The fourth and fifth instances of the intent occurred each time Mr. McGrath offered to give the passbook to Miss Bean.
As stated above, rules pertaining to surrender of dominion and control and delivery are not technically applicable here. Since the intent of Mr. McGrath was to pass a present interest in the account, the other requisite evidence follows easily. The signing of the signature card, coupled with the deposit of $398.00, plus the obvious *384 desire of Mr. McGrath to give Miss Bean a present interest in the account, made it perfectly clear that Miss Bean held an interest, before McGrath's death, in the fund.
The evidence that she refused possession of the bank book and that she personally never drew out any money does not clearly and convincingly refute the presumption that she had the power to make withdrawals before the contemplated marriage. At most, this evidence is subject to ambiguous inferences. The nonuse of this power does not here imply its nonexistence. There was nothing left for Miss Bean or the bank to do to create the joint account. Further, her lack of possession of the bank book has been satisfactorily explained above. When this explanation is added to (1) the fact that there was only one bank book for the joint account and (2) the theory that the bank book is not an indispensable document  the "thing" given is the interest of the funds on deposit equal to that of the donor, all inferences adverse to Miss Bean's ownership have little evidentiary value.
We think the chancellor was correct in finding Miss Bean the exclusive owner of the savings account and its sole surviving joint tenant.
Appellant's other point concerns the chancellor's alleged erroneous ruling that the filing of a request for admissions under Rule 1.30, Fla.R.Civ.P., 30 F.S.A., by an executor to an adverse party, constituted a waiver of the Dead Man's Statute.
Assuming this was error, but not deciding, we believe that appellant has not shown this ruling amounted to reversible error. Primarily, appellant has not demonstrated how his case was prejudiced by the chancellor's ruling. In fact, appellant elected to call Miss Bean to testify as part of his case.
Since prejudicial error has not been clearly demonstrated, Green v. Loudermilk, Fla.App. 1962, 146 So.2d 601, and 2 Fla.Jur., Appeals § 358 (1963), we cannot say that the chancellor's ruling on the requests for admission constituted reversible error.
Affirmed.
PIERCE, J., and HODGES, JOHN G., Associate Judge, concur.