366 So.2d 804 (1979)
Helen E. CONSTANCE, Appellant,
v.
Kate CONSTANCE, As Personal Representative of the Estate of Samuel J. Constance, Appellee.
Nos. 78-143, 78-757.
District Court of Appeal of Florida, Third District.
January 9, 1979.
Rehearing Denied February 12, 1979.
*805 Greenberg, Traurig, Hoffman, Lipoff, Quentel & Wolff and Robert M. Sondak, Miami, for appellant.
Rollins, Peeples & Meadows and Lewis Milledge, Jr., South Miami, for appellee.
Before HAVERFIELD, C.J., and PEARSON and HENDRY, JJ.
PEARSON, Judge.
Defendant Helen E. Constance has brought these consolidated appeals (1) from an adverse final judgment of the circuit court and (2) from a subsequent circuit court order denying Defendant's Motion for Relief from Judgment.
Plaintiff Samual J. Constance filed a Petition for Injunction and Other Relief on April 25, 1977, against his daughter, defendant Helen E. Constance. He sought a temporary injunction and restraining order and a final injunction ordering the defendant to return certain funds removed by her from three bank accounts in the joint names of *806 the plaintiff and defendant. On the day the petition was filed, the circuit court judge entered a temporary injunction and restraining order without notice, freezing all funds in the defendant's bank accounts at the Florida National Bank and Trust Company. On May 2, 1977, the trial judge denied the defendant's motion to dissolve the April 25th injunctive order. The defendant filed her answer to the petition and moved to have the petition dismissed on the basis that it was grounded upon agreements not attached to the petition. The court denied the defendant's motion to dismiss at the commencement of trial.
Between August of 1953 and March of 1972, the plaintiff and defendant opened a joint personal checking account at the Florida National Bank and Trust Company, a joint savings account at the First Federal Savings and Loan Association of Miami and another joint savings account at the Greater Miami Federal Savings and Loan Association. In all three instances, the parties signed signature cards providing that the accounts were jointly owned by both the plaintiff and defendant, with right of survivorship.
In September of 1975, the plaintiff and defendant signed a lease for a joint safe deposit box at the Florida National Bank and Trust Company. The address on the lease was that of defendant Helen E. Constance. Also, the defendant was given one of the two keys, which she has had in her possession ever since. The pass books from the two jointly-owned savings accounts were kept in this safe deposit box.
On April 7, 1977, defendant Helen E. Constance withdrew large sums of money from each of the three jointly-owned accounts. After making these withdrawals, she opened a savings account at the Florida National Bank and Trust Company in the name of "Miss Helen E. Constance, in trust for Samuel J. Constance" and she deposited the sum of her withdrawals, $38,569.67,[1] into this account. These funds were frozen by the court order here in question.
During the trial, the defendant objected to the introduction of testimony with regard to the intention of the parties in opening and maintaining the three bank accounts in question. This objection was based on the contention that the parol evidence rule precludes testimony inconsistent with the signed writings of the parties. The defendant's standing objection to such testimony was overruled by the trial judge, who also denied the defendant's motions to dismiss the petition and for judgment on the pleadings. These two motions were based on the premise that the signature cards conclusively established the ownership of the funds in the joint names of the parties. The court took the position that the defendant had a right to take the funds out of the three accounts but did not have a right to dispose of or use the funds.
There was conflicting testimony throughout the trial concerning the intention expressed by the plaintiff to his daughter with regard to the money deposited in the three accounts. The plaintiff's testimony was that he intended to leave intact the principal in each of the accounts and simply allow the two savings accounts to grow as much as possible. The plaintiff's intention was to provide for his own security during his lifetime and for the security of the defendant, his daughter, after his death.[2] The plaintiff testified at trial that he had stated to his daughter that she "... couldn't touch anything until after I had passed away." He further testified to having instructed his daughter that she "... was not to touch them [the bank books in the safe deposit box] at all in any way, shape or form." The plaintiff's position was that the defendant was to have access to the money only in case of an emergency.
The defendant testified that at no time was she instructed by her father that she *807 was not permitted to take money out of the accounts. Rather, she testified that her father had told her that should the need arise, she could make withdrawals and spend money for necessities and emergencies.[3] It was the defendant's position at trial that she withdrew the money in question here for an emergency in order to prevent the dissipation of the accounts by her stepmother. She stated that the funds would be available to her father for emergencies and that the interest as it accrued would be turned over to him. In addition, she testified that her father told her repeatedly that he would not touch the principal in the accounts and often expressed his gratitude to her for permitting him, in his old age, to spend the interest from the accounts.
On November 18, 1977, the trial judge entered his final judgment vacating the temporary injunction and ordering Florida National Bank and Trust Company to "return" funds to the plaintiff in the amount of $38,569.67. Following a timely notice of appeal, the defendant filed a Motion for Relief from Judgment, based upon the changed circumstances resulting from the death of her father, the plaintiff.[4] This court, having temporarily relinquished jurisdiction in order for the trial court to rule on the defendant's motion, the trial court thereupon denied the motion and the defendant filed a notice of appeal from that order and moved in this court for the consolidation of her two pending appeals. By order of April 25, 1978, this court granted the defendant's motion to consolidate.
The Appeal from the Final Judgment
The trial judge does not give us the benefit of his findings except to state "... that the testimony rebuts the existence of a joint tenancy ..." Based thereon, the trial judge ordered that Florida National Bank and Trust Company of Miami (not a party to the suit below) should turn over funds in the amount of $38,569.67, "... to the plaintiff Samuel J. Constance."[5]
The first point presented on appeal urges that under the law the trial court could not order the money to be paid to the plaintiff, inasmuch as the signature card on each account stated in unmistakable terms that all the money therein was joint property. See Hinkle v. State, 355 So.2d 465 (Fla.3d DCA 1978), and Cape Coral Bank v. Kinney, 321 So.2d 597 (Fla.2d DCA 1975). There is no doubt that as between the depositor and his joint signer, there is a strong presumption of joint ownership. The Hinkle and Cape Coral Bank cases, cited above, stand for the proposition that in the absence of strong evidence of a contrary intent, the joint ownership will not be disturbed. See Spark v. Canny, 88 So.2d 307 (Fla. 1956); and Maier v. Bean, 189 So.2d 380 (Fla.2d DCA 1966).
It does not follow that, as between the depositor and the joint signer, an equitable ownership cannot be asserted. That equity regards substance and not form is a time-honored maxim by which the true ownership of property may be pursued, even though a deed or grant would bar the way at law. Cf. King v. King, 55 So.2d 181 (Fla. 1951).
The second point on appeal questions the sufficiency of the evidence. The court had jurisdiction to declare the ownership of the disputed funds and there was sufficient evidence before the court to determine that the plaintiff, Samuel J. Constance, was the true owner of the money. The defendant's reliance on Sections 659.29 *808 and 665.271, Florida Statutes (1977), as determinative of the equitable ownership of the money in the accounts, is unavailing because these statutes deal with the rights of financial institutions and do not bind these parties as between themselves.
A third point draws our attention to the fact that the relief granted included injunctive relief against a non-party, Florida National Bank and Trust Company of Miami. This error is not prejudicial to the defendant. It may be corrected by the court at any time on motion. See Fla.R. Civ.P. 1.540.
The Appeal from the Order Denying Relief from the Judgment
During the pendency of this appeal, the plaintiff died. Thereafter, the defendant moved to be relieved from the judgment on the basis of the plaintiff's death. The trial judge denied the motion. We agree that the law does not provide a remedy as a result of the death of a party after judgment. Cf. Cape Coral Bank v. Kinney, 321 So.2d 597 (Fla.2d DCA 1975). It is an unhappy result that the defendant, by her withdrawal of the money from the accounts, deprived herself of the benefit of the expressed intent of her father to have the use of those funds after his death. Nevertheless, it is true that the courts must deal with legal rights as they exist and not with supposition. We do not know what might have happened had the defendant daughter not withdrawn the funds or the plaintiff father not brought the suit to declare his ownership.
Affirmed.
NOTES
[1] All but $2,000 of the $38,569.67 was earned by the plaintiff after the death of his first wife (the defendant's mother) in 1953. The plaintiff married his present, second wife in 1954.
[2] The plaintiff paid the income tax on the interest earned on the savings accounts.
[3] Testimony revealed that the defendant had a physical handicap (cerebral palsy), but that she had been for many years self-supporting and has been impaired only in the sense that she needed items, due to her condition, that might be considered luxuries for non-handicapped people.
[4] Upon the plaintiff's death, his second wife (his widow), Kate Constance, was substituted in his place in this cause.
[5] It should be noted that the judgment does not direct that the funds be returned to the savings accounts. The return of the money to the plaintiff father was the relief sought in the complaint.