504 So.2d 439 (1987)
Barbara Ruth WINTERTON and Eleanor Frances Friedman, As Personal Representatives of the Estate of Veit E. Kaufmann, Deceased, and Barbara Ruth Winterton, Individually, Appellants,
v.
Roma KAUFMANN, Appellee.
No. 86-1168.
District Court of Appeal of Florida, Third District.
March 3, 1987.
Rehearing Denied April 15, 1987.
*440 Payton & Rachlin and Harry A. Payton, Miami, for appellants.
Young, Stern & Tannenbaum and Glen Rafkin and Jeffrey Gilbert, North Miami Beach, for appellee.
Before HENDRY, DANIEL S. PEARSON and JORGENSON, JJ.
PER CURIAM.
This is an appeal from a final judgment rejecting appellants' claims for conversion and civil theft, finding as a matter of law that appellee owned certain disputed property by virtue of survivorship or gift inter vivos from her late husband.
It is appellants' initial contention on appeal that the trial court erred in failing to enforce the provision of the antenuptial agreement entered into between Roma and Veit E. Kaufmann which stated that neither party would "have or acquire any right, title, interest in, or claim in and to the real or personal estate of the other" and that the estate of each of the parties would descend to that party's heirs as provided by will or by operation of law, "as though no marriage had ever taken place between the parties."
*441 We affirm, upon a holding that appellants have failed to demonstrate reversible error with regard to the above point, as well as the several other points raised on appeal. The order under review is supported by substantial competent evidence in the record. We approve and adopt the trial court's comprehensive Findings of Fact, Conclusions of Law and Final Judgment which states, in pertinent part, as follows:

FINDINGS OF FACT
The Defendant ROMA KAUFMANN (hereinafter "Roma") and VEIT E. KAUFMANN (hereinafter "Veit") were married on October 27, 1977. Prior to their marriage, Roma and Veit executed an antenuptial agreement. The antenuptial agreement did not prohibit Roma or Veit from owning property jointly or making gifts to each other during the course of their marriage.
Prior to their marriage, Roma and Veit opened a joint safe deposit box and a joint savings account at People's First National Bank. They also opened a joint checking account at Southeast National Bank of North Dade. The "Authorized Signature Card" prepared by People's First National Bank for the joint safe deposit box read: "Viet or Roma Kaufman [sic]." Both Roma and Veit signed as "principals." Each received his or her own key to the box.
Throughout the marriage, both Roma and Veit individually maintained separate checking and savings accounts. Veit maintained his individual accounts until 1981. Similarly, Roma did not disturb her checking and savings accounts that she had opened prior to her marriage to Veit.
Subsequently, the couple moved their joint checking account from Southeast National Bank of North Dade to People's First National Bank. Both Roma and Veit had complete access and control of all funds maintained by them in the joint checking and savings accounts. From time to time, they wrote checks and made withdrawals from these joint accounts to purchase bearer bonds through accounts they maintained at Merrill, Lynch, Pierce, Fenner and Smith, located on Arthur Godfrey Road on Miami Beach, and L.F. Rothschild, located in New York. During the course of their marriage, Roma and Veit acquired ten series of bonds with their joint funds, to wit:
1. California Water, purchased on or about February 13, 1978.
2. Florida Orlando Exposition, purchased on or about December 14, 1978.
3. Oregon Veterans, purchased on or about February 4, 1980.
4. Idaho Health, purchased on or about March 2, 1981.
5. Sebring, purchased on or about April 7, 1981.
6. Florida State Board of Education, purchased on or about May 1, 1981.
7. Intermountain Power, purchased on or about January 4, 1982.
8. Illinois Transportation, purchased on or about April 27, 1982.
9. Oregon Highway, purchased on or about April 27, 1982.
10. State of Washington, purchased on or about August 10, 1982.
Roma and Veit kept eight of those ten series of bonds in their joint safe deposit box. Roma kept those eight bonds plus two bonds Veit acquired prior to the marriage  California Health Facility and State of Wisconsin  in the joint safe deposit box for more than eight months after Veit's death. She removed the bonds when the lease expired. In addition, during the marriage Roma kept two series of bonds  the Intermountain Power and Illinois Transportation bonds  in her own safe deposit box. The ten series of bonds purchased by the couple during the marriage with joint funds were purchased after Veit executed his will and no mention of them or any other bearer bonds is made therein.
Roma and Veit ventured frequently to their safe deposit box to clip the coupons and deposit them into their joint accounts. They went into the deposit box area together and removed the box with the attendant's help. Roma obtained scissors from the attendant and the couple clipped the coupons.
*442 They labeled the coupon envelopes, placed the coupons in the envelopes and deposited the coupons into their joint checking and savings account. Roma and Veit entered the safe deposit box together at least 34 times. Roma entered the box alone on occasion to clip the coupons and deposit the interest into their accounts.
Roma testified she entered the box alone a few times in 1979 when Veit was in the hospital. But Veit was not in the hospital when, for example, Roma alone entered the safe deposit box and clipped the coupons in March, 1982.
Veit died on November 11, 1982. Roma delivered to the Estate during the first week of December, 1982 all of Veit's Estate property.

CONCLUSIONS OF LAW
Based on these Findings of Fact, the Court makes the following conclusions of law and Final Judgment:
A. Roma owned the funds in the joint checking and savings accounts during the marriage and on the date of Veit's death. It is undisputed that Roma and Veit initially established the joint accounts with Veit's funds. Nevertheless, when a joint bank account is established with the funds of one person, a gift of the funds remaining in the account is presumed. Chase Federal Savings and Loan Association v. Sullivan, 127 So.2d 112 (Fla. 1960); Spark v. Canny, 88 So.2d 307 (Fla. 1956).
B. The presumption that Veit made a gift to Roma of the funds remaining in the joint accounts may be rebutted only by clear and convincing evidence to the contrary. Id. See also, Teasley v. Blankenberg, 298 So.2d 431 (Fla. 4th DCA 1974); and Florida Statutes section 658.56(2). Plaintiffs were required to establish by clear and convincing evidence that Roma did not own the funds in the joint checking and savings accounts during the marriage. They failed to do so. Testimony was uncontradicted that Roma had a present interest in the funds. See, Maier v. Bean, 189 So.2d 380 (Fla. 2d DCA 1966) (the "nonuse" of the power to withdraw funds from a joint account does not imply the nonexistence of the power). On the contrary, Plaintiffs did not contradict Roma's testimony that she and Veit made frequent deposits into and withdrawals from the joint savings accounts and that Roma herself wrote more than 150 checks on the joint checking accounts.
C. Roma owned the bearer bonds that she and Veit purchased with their joint funds because she used her money from the joint accounts to pay for them. Additionally, Roma was vested with the ownership of the bearer bonds upon Veit's death as the surviving tenant by the entirety. Plaintiffs did not contradict the evidence that Roma and Veit retained eight of the ten series of bonds that they purchased with joint funds in their joint safe deposit box. Roma placed the two remaining series of bonds that they purchased into her separate safe deposit box immediately upon delivery. Because Roma exercised sole and absolute dominion and control over the contents of her separate safe deposit box, the two series of bonds she kept therein  the Intermountain Power and Illinois Transportation bonds  are presumed to have been owned by her before Veit's death. Plaintiffs did not rebut this presumption.
D. Therefore, this Court need consider only whether Roma owned the eight series of bonds purchased with joint funds that remained in the joint safe deposit box at Veit's death. She did. A tenancy by the entirety occurs when there exist five unities: (1) unity of marriage; (2) unity of possession; (3) unity of interest; (4) unity of title; and (5) unity of time. Bechtel v. Estate of Bechtel, 330 So.2d 217, 219 (Fla. 2d DCA 1976), aff'd [after] remand, 348 So.2d 927 (Fla. 2d DCA 1977). All five unities are present in this case. This includes the unity of title. Bearer bonds, by their nature, are not titled in the name of one or more persons. The joint funds that Roma and Veit used to purchase the bearer bonds never lost their joint nature at any time before or after the purchases. Roma and Veit were together at all times when they purchased the bonds. The funds *443 moved from joint accounts through a brokerage account and into the joint safe deposit box. At no time were the joint funds placed beyond Roma's control in such a manner that would be inconsistent with her continued joint possession and ownership. Each time a bond was purchased with joint funds, Roma and Veit together took delivery of it and immediately deposited it into the joint safe deposit box.
E. Unlike in the Bechtel case, there exists in this case a tenancy by the entirety between Roma and Veit in the contents of the joint safe deposit box because: (1) Roma frequently exercised control over the box and its contents; (2) she frequently opened the safe deposit box, sometimes alone; and (3) she had her own key to the box which she used many times.
F. Even if there did not exist in this case a tenancy by the entirety between Roma and Veit in the contents of the safe deposit box, Veit effectively passed to Roma a gift inter vivos of the bearer bonds located in the joint safe deposit box. Ordinarily, to pass title by gift inter vivos, the donor must surrender dominion over the res and intend to pass title in the res to the donee. Kuebler v. Kuebler, 131 So.2d 211 (Fla. 2d DCA 1961), cert. dismissed, 139 So.2d 696 (Fla. 1962). But an estate of joint tenancy with the right of survivorship or a tenancy by the entirety does not require the donor to surrender completely his dominion and control. Id. See, e.g., Spark v. Canny, 88 So.2d 307 (Fla. 1956). In the present case there is no "delivery" by Veit to Roma of the gift of the funds in the joint accounts because each of them had an equal right to withdraw the funds at any time. The thing given by Veit to Roma was not the money, in specie, on deposit in the joint bank account; it was a gift of an interest in the funds on deposit equal to that of Veit's. Spark v. Canny, 88 So.2d at 311. It follows necessarily that the gift of the bearer bonds amounted to nothing more than a gift of the joint funds, which gift Plaintiffs did not rebut with clear and convincing evidence. Therefore, the gift inter vivos of all twelve bearer bonds, regardless of the source of the monies used to purchase them, was established at trial.
Accordingly, it is
ADJUDGED AS FOLLOWS:
1. That Defendant, ROMA KAUFMANN, is entitled to the entry of a judgment, and a judgment is hereby entered, in her favor and against the Plaintiffs, BARBARA RUTH WINTERTON and ELEANOR FRANCES FRIEDMAN, with respect to all counts of the Complaint filed by them in this action. In the opinion of this Court, Defendant ROMA KAUFMANN owns the twelve (12) series of bearer bonds and all of the interest therefrom and the funds from the joint checking and savings accounts. Accordingly, the Complaint and amendments thereto are hereby dismissed, on the merits, with prejudice as to all counts thereof.
2. That the Court hereby reserves jurisdiction to tax against the Plaintiffs all costs reasonably and necessarily expended by Roma in the defense of this action.

* * *
Affirmed.
DANIEL S. PEARSON, Judge, concurring.
I concur in the affirmance of the trial court's determination that the bonds were not part of Veit's estate at his death. On the evidence presented the trial court could well have found that the appellants failed to rebut by clear and convincing evidence the presumption of a gift that arises where a husband bestows on his wife a present, unfettered right to withdraw jointly held funds (the bearer bonds), even though the husband is the sole contributor to the funds and exercises joint dominion and control over them. See Maryea v. Maryea, 320 So.2d 882 (Fla. 2d DCA 1975); Green v. Green, 314 So.2d 801 (Fla. 3d DCA 1975), cert. denied, 336 So.2d 600 (Fla. 1976). Moreover, because bearer bonds are "negotiable instruments transferable by delivery ... good title to them is presumptively in the holder and the burden is on the objectors to show the contrary." Anderson v. Pennsylvania Hotel Co., 56 F.2d 980, 982 (5th Cir.1932). The evidence supports the *444 conclusion that the personal representatives failed to carry their burden to rebut this latter presumption as well.