968 So.2d 47 (2007)
Bret BERLIN, as Personal Representative of the Estate of Jerome C. Berlin, Appellant,
v.
Arlene PECORA, Signature Grand Ltd., a Florida limited partnership; Grand Partners, Inc., a Florida corporation, and as general partner of Signature Grand Ltd., a Florida limited partnership; Signature Gardens Ltd., a Florida limited partnership; Deux Michel, Inc., a Florida corporation, and as general partner of Signature Gardens Ltd., a Florida limited partnership, Appellees.
Nos. 4D06-183, 4D06-3194.
District Court of Appeal of Florida, Fourth District.
September 19, 2007.
Rehearing Denied December 3, 2007.
*48 Barbara J. Compiani and Jane Kreusler-Walsh of Kreusler-Walsh, Compiani & Vargas, P.A., West Palm Beach, and Edward R. Curtis of Tripp, Scott, P.A., Fort Lauderdale, for appellant.
Nancy W. Gregoire of Bunnell Woulfe Kirschbaum Keller McIntyre Gregoire & Klein, P.A., and Michael W. Moskowitz of Moskowitz, Mandell, Salim & Simowitz, *49 P.A., Fort Lauderdale, for appellee Arlene Pecora.
SHAHOOD, C.J.
Bret Berlin, as personal representative of the Estate of Jerome Berlin (Berlin), appeals the final declaratory judgment in a partnership dispute which found that Michael Pecora (Michael) and his wife, Arlene Pecora (Arlene) held the limited partnership interest in Signature Grand, Ltd. and the stock of Deux Michel, Inc. and Grand Partners, Inc. as tenants by the entireties. We affirm.
In 1982, Michael formed a limited partnership with Berlin called Signature Gardens, Ltd. The general partner of this limited partnership is a corporation, Deux Michel, Inc. The stock in Deux Michel, Inc. was issued equally to Michael, Berlin, and Michael Selig (Selig). Selig was bought out by Deux Michel, Inc. in 1989.
In 1993, Michael and Berlin formed the limited partnership Signature Grand, Ltd. The general partner of this limited partnership is the corporation Grand Partners, Inc. The Grand Partners, Inc. stock was issued equally to Michael and Berlin.
Arlene worked as director of sales for the limited partnerships, Signature Gardens, Ltd. and Signature Grand, Ltd. for one year before each facility opened in approximately 1984 and 1995, respectively. She did not work for either entity again until November 2001.
On April 28, 2003, Berlin fired Arlene and the next day Michael shot and killed Berlin and then shot and killed himself.
Michael left a suicide letter for Arlene and a letter directed to the comptrollers of Signature Gardens, Ltd. and Signature Grand, Ltd., appointing Arlene to act in his absence as president and CEO of Grand Partners, Inc. and Deux Michel, Inc.
Arlene filed a complaint alleging that she and Michael had jointly owned the corporate stock and limited partnership interests as tenants by the entireties and therefore those interests immediately passed to her as the surviving spouse upon Michael's death.
At a non-jury trial Arlene maintained that she and her husband had an understanding that they would hold bank accounts, stock and real estate jointly as tenants by the entireties. She testified that their ownership interests in Signature Gardens, Ltd., Deux Michel, Inc., and Grand Partners, Inc. were purchased through their joint bank accounts.
Other witnesses testified to conversations they had with Berlin and Michael in which Arlene was identified as a limited partner or joint tenant in the businesses.
At the end of the trial, the trial court judge orally ruled that Arlene and Michael had owned the limited partnership interest in Signature Grand, Ltd. and the stock in the corporations, Deux Michel, Inc. and Grand Partners, Inc. as tenants by the entireties. The court later entered a Final Declaratory Judgment in favor of Arlene and granted Arlene's motion to tax costs.
On appeal, Berlin argues that the trial court erred because it overlooked the corporate documents. Berlin cites to several documents as evidence that both corporations established stock ownership in Michael alone. These documents include the minutes of Deux Michel, Inc. showing that Michael owned 200 shares; a February 1984 resolution and stock certificate showing an additional hundred shares issued to Michael, individually; July 1993 minutes of Grand Partners, Inc. reflecting Michael owning 200 shares in the company; and K-1 tax schedules for Deux Michel, Inc. and Grand Partners, Inc. showing Michael as the shareholder.
*50 "[C]orporate records provide a prima facie evidentiary basis for determining ownership of corporate stock." Sackett v. Shahid, 722 So.2d 273, 275 (Fla. 1st DCA 1998). However,
[I]t is within the trial judge's province, when acting as trier of both fact and law, to determine the weight of the evidence, evaluate conflicting evidence, and determine the credibility of the witnesses, and such determinations may not be disturbed on appeal unless shown to be unsupported by competent and substantial evidence, or to constitute an abuse of discretion.
Jockey Club, Inc. v. Stern, 408 So.2d 854, 855 (Fla. 3d DCA 1982).
The above mentioned documents provide evidence that Michael was the only recognized name mentioned with stock ownership in the companies. Nevertheless, these documents are contradicted with testimony at trial that the stock was held jointly; evidence and testimony that Michael and Arlene made purchases through a joint account; and other documents admitted at trial indicating joint ownership, thereby providing competent and substantial evidence for the trial court's ruling.
One additional document cited by Berlin is a 1997 Guarantor Affidavit and Spousal Disclaimer. This document was made to provide security for a loan from BankAtlantic to Signature Grand, Ltd. In the document, Michael listed his stock interests in Grand Partners, Inc. and Deux Michel, Inc. and his partnership interests in Signature Grand Ltd. and Signature Gardens, Ltd. Arlene acknowledged in the affidavit that the assets were owned solely by Michael and disclaimed any interest in the assets.
The premise behind the affidavit comes into doubt in light of the testimony by Susan Imbrigiotta, the Vice President of Commercial Real Estate Lending for BankAtlantic. She testified that she was the original loan officer for the 1997 loan transaction with Signature Grand, Ltd. She explained that this loan transaction required a Guarantor Affidavit and Spousal Disclaimer, which is used when the guarantor signing on the loan is married and his or her spouse is not personally signing on the loan; both spouses then must sign the Affidavit. She admitted that the relevant part of the financial affidavit attached to the Affidavit in BankAtlantic's file was that of Berlin, not Michael. Therefore, Arlene disclaimed only Berlin's interests in Grand Partners, Inc., Signature Grand, Ltd., Deux Michel, Inc., and Signature Gardens, Ltd.
Based on the above, there was competent substantial evidence to find the affidavit was not intended to divest Arlene of her ownership interests in the companies.
Berlin also argues that Arlene failed to prove any of the elements necessary to establish a tenancy by the entirety. Arlene argues that her entireties interest arose as a result of her investments in the corporate assets from her joint bank account with Michael.
Under a tenancy by the entirety, "[u]pon the death of one spouse, the surviving spouse continues to be seized of the whole. Thus . . . after death of one spouse the surviving spouse continues to hold the entire estate. . . ." Cacciatore v. Fisherman's Wharf Realty Ltd. P'ship, 821 So.2d 1251, 1254 (Fla. 4th DCA 2002). Property held as a tenancy by the entireties possesses six characteristics:
(1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must *51 have commenced simultaneously); (5) survivorship; (6) unity of marriage (the parties must be married at the time the property became titled in their joint names).
Beal Bank, SSB v. Almand & Assocs., 780 So.2d 45, 52 (Fla.2001) (footnote omitted).
Arlene's main argument and the one that the trial court agreed with, is that the tenancy by entirety was created through the use of a joint account to buy the interests. Bank accounts are afforded the same presumption of tenancy by the entireties as is real property. Beal Bank, 780 So.2d at 58. Property purchased with joint funds may create a tenancy by the entirety in that property so long as the unities are met. For example, in Winterton v. Kaufmann, 504 So.2d 439 (Fla. 3d DCA 1987), the court found that after the husband died, the wife owned bonds that were purchased with joint funds and kept in a joint safe deposit box. See also Estate of Fields v. Fields, 581 So.2d 1387, 1388 (Fla. 3d DCA 1991) ("The bearer bonds, purchased with joint funds and maintained in the couple's joint safe deposit box, passed to the wife upon the husband's death. The bearer bonds were held by the spouses as tenants by the entirety; ownership vested in the wife as the survivor."). Once tenancy by the entirety property is established, its subsequent transfer to another asset does not terminate the unities of title or possession. See Passalino v. Protective Group Sec., Inc., 886 So.2d 295, 297 (Fla. 4th DCA 2004) ("Transferring the proceeds of the sale of entireties property to a trustee for the benefit of the husband and wife does not terminate the unities of title or possession. . . ."); Lerner v. Lerner, 113 So.2d 212 (Fla. 2d DCA 1959).
Here, the six characteristics needed to prove the tenancy by the entirety are largely based upon the assumption that joint funds were used in the inception of the companies, even though the proof of the use of joint funds is illustrated only by checks dated after the inception of the companies and witness testimony.
"[U]nless a tenancy by the entireties is clearly expressed in the instrument, the parties must prove they intended to create a tenancy by the entireties." Hurlbert v. Shackleton, 560 So.2d 1276, 1279 (Fla. 1st DCA 1990); Morse v. Kohl, Metzger, Spotts, P.A., 725 So.2d 436, 438 (Fla. 4th DCA 1999). The trial court heard testimony from witnesses as well as the admission of several documents in which it found that the intention was to create a tenancy by the entirety. This is a factual question which the court ultimately determined by competent substantial evidence in favor of Arlene. See Sitomer v. Orlan, 660 So.2d 1111, 1115 (Fla. 4th DCA 1995) ("Whether the parties created a tenancy by the entireties in a bank account-whether they were each taking the whole of the account-is a question of fact.").
Because substantial competent evidence supported the trial court's finding that Arlene and Michael held their ownership interests as tenants by the entireties, this court cannot reverse that finding. The trial court also properly granted Arlene's motion to tax costs.
Affirmed.
STEVENSON, J., and BELANGER, ROBERT E., Associate Judge, concur.