554 So.2d 600 (1989)
Cecil E. KING, Jr., Appellant,
v.
ESTATE OF Cecil E. KING, Sr., J.T. Williams, Jr., Co-Personal Representative, Appellee.
No. 88-2747.
District Court of Appeal of Florida, First District.
December 20, 1989.
Rehearing Denied January 18, 1990.
Fred F. Harris, Jr., of Roberts, Baggett, LaFace & Richard, Tallahassee, for appellant.
Mallory E. Horne, Tallahassee, for appellee.
WENTWORTH, Judge.
Appellant seeks review of a declaratory judgment order by which it was determined that two bank accounts are assets of the estate of appellant's deceased father and do not pass by right of survivorship. We conclude that the court below was entitled to find that the statutory presumption in section 658.56, Florida Statutes, with regard to survivorship accounts, was rebutted by clear and convincing proof of a contrary intent. We further conclude that the court did not err by receiving parol evidence in this regard. We therefore affirm the order appealed.
A co-personal representative of the decedent's estate petitioned for a declaratory judgment as to whether two bank accounts are estate assets, or pass by right of survivorship. Copies of the account signature cards were submitted with the petition. These documents indicate that the accounts were maintained as joint and several accounts in the name of the decedent or appellant, with the further comment "adding son's name to account."
A hearing was held at which appellant, the decedent's two daughters, and the co-personal representative (who is also married to one of the daughters) all testified. The testimony indicated that after the decedent's death appellant and the co-personal representative prepared an initial inventory of the estate. The two disputed bank accounts were listed as estate assets, with no indication of any joint ownership or survivorship right, and appellant did not object to *601 the listing or assert any right to or interest in the accounts. Several months later when a formal inventory was prepared appellant claimed ownership of the larger account, and it was listed as an asset "in dispute." However, at that time appellant still did not assert any interest in the smaller account.
The various witnesses described the decedent as an astute businessman who encountered certain medical problems as he became older. After he paid a bill twice, and received a refund, he became concerned about his ability to manage his own finances and asked one of his daughters to assist him. The daughter did not feel that she would be comfortable managing the complicated transactions, and the decedent then asked the co-personal representative for such assistance. This individual agreed to help with certain financial matters, but believed that it would be more appropriate for a blood relation to be authorized to sign checks for the decedent and suggested that appellant might perform this function.
Appellant agreed to sign the decedent's checks, and they went to the bank together to complete the necessary paperwork. The two disputed accounts, which had been maintained in the decedent's name alone, were then written in the name of the decedent or appellant. Appellant testified that when he inquired as they left the bank the decedent acknowledged that he had created joint accounts. Appellant thereafter sometimes wrote checks for the decedent, and sometimes signed checks which the decedent had written. The only money put into these accounts came from the decedent's funds, and the checking account was used solely for disbursements by the decedent. These disbursements included a monthly amount paid to appellant.
Shortly before his death the decedent convened a family meeting and informed his children as to his various investments and assets. A list was prepared which showed the two bank accounts solely as personal assets, and appellant did not question this description. It was established that when the decedent had previously made occasional gifts of assets to appellant, the decedent would advise his daughters as to such distributions. The daughters indicated that the decedent never expressed an intention to give appellant any interest in the two bank accounts.
After the evidence was presented the court found that section 658.56, Florida Statutes, does not apply to create a presumption of any survivorship interest in the bank accounts since "there is clear and convincing proof it was not the intent ... to make a gift ... or set up a survivorship account... ." The court thus concluded that all of the funds in the two contested bank accounts are assets of the decedent's estate.
Section 658.56, Florida Statutes, states that:
(1) Unless otherwise expressly provided ... the opening or maintenance of an account ... in the names of two or more persons ... payable to ... one or more of them or the surviving account holder or holders, all such persons ... shall be presumed to have intended that upon the death of any such person all rights, title, interest, and claim ... shall vest in the surviving account holder or holders.
(2) The presumption herein created may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent... .
Section 658.56 creates a rebuttable presumption that appellant has a survivorship interest in the two bank accounts which were maintained by the decedent in both their names, but this presumption may be overcome by clear and convincing proof of a contrary intent. Insofar as the record presents such proof, the court properly found that the presumption was overcome and section 658.56 does not apply to create any survivorship interest in this case.
The testimony presented below included parol evidence offered to show that the accounts were not intended to pass by survivorship. Such parol evidence generally may not be used to modify the terms of a complete and unambiguous written agreement. See e.g., J.M. Montgomery Roofing Co. v. Howland, 98 So.2d 484 (Fla. 1957). However, section 658.56 authorizes *602 such proof in this case with regard to the statutory presumption which may be rebutted by proof of a contrary intent. And since no objection invoking the rule was made below appellant may be deemed to have waived any issue regarding the admissibility of such parol evidence. While appellant now contends on appeal that the rule is one of substantive law, as indicated in Knabb v. Reconstruction Finance Corp., 144 Fla. 110, 197 So. 707 (1940), and Beach Keys Inc. v. Girvin, 213 So.2d 314 (Fla. 1st DCA 1968), this characterization of the rule does not obviate the need for adherence to principles of procedure which require that the issue be presented by an objection in the lower court. Furthermore, we find that even were the issue properly presented below, and the parol evidence rule strictly applied, the notation on the signature cards that the decedent was "adding son's name to account" creates a sufficient ambiguity with regard to this change in the context of this case as to permit the presentation of parol evidence addressing the decedent's intent.
The evidence presented was sufficient to permit the court to determine that there was clear and convincing proof that the decedent sought to create a joint account for the purpose of convenience, without any intent to transfer a survivorship interest to appellant. The court was thus entitled to find that the statutory presumption does not apply, and that the two bank accounts do not pass by survivorship but rather are assets of the decedent's estate.
The order appealed is affirmed.
MINER, J., concurs.
ERVIN, J., dissents with Opinion.
ERVIN, Judge, dissenting.
I cannot agree that parol evidence was admissible to vary the clear and unambiguous terms of the two joint bank accounts which establish the decedent's intention that the surviving tenant would have the right to any remaining funds in the accounts. Alternatively, assuming that the majority is correct in its decision that appellant waived his right to urge the error on appeal by failing to raise a timely objection to the admission of parol evidence, I consider that the extrinsic evidence offered by the estate lacks the clear and convincing character necessary to rebut the presumption that the decedent intended, by opening the two joint bank accounts, to effect a disposition of the property remaining in the accounts, testamentary in nature. I would therefore reverse the order declaring that the two accounts are assets of the estate to be distributed in accordance with the decedent's will. The remainder of this dissent is divided into two parts; the first addresses my position that the lower court erred in admitting parol evidence contradicting the clearly expressed agreements signed by the two joint tenants, and the second, my alternative position.

I.
Initially, I disagree with the majority's conclusion stating that the appellant's failure to make an objection invoking the parol evidence rule waived any issue regarding the admissibility of parol evidence. The majority correctly cites Knabb v. Reconstruction Fin. Corp., 144 Fla. 110, 197 So. 707 (1940), and Beach Keys, Inc. v. Girvin, 213 So.2d 314 (Fla. 1st DCA 1968), for the proposition that the parol evidence rule is a rule of substantive law and not a rule of evidence, in that it has nothing to do with the value of one fact as probative of the existence of another. As a rule of substantive law, the traditional view is that the admission of evidence in violation of the parol evidence rule does not make such evidence competent, even if admitted without objection. 30 Am.Jur.2d Evidence § 1022 (1967). Therefore, a party's objection to the admission of parol evidence is not waived in the absence of a contemporaneous objection. Id. Florida's Evidence Code appears to implicitly recognize this, because the Code is expressly stated to have no effect upon the parol evidence rule. See § 90.103(3), Fla. Stat. Consequently, that portion of the Code requiring a party's *603 timely specific objection[1] is apparently inapplicable to parol evidence admitted without objection.
There are, to be sure, divergent views regarding whether the failure to assert an objection to parol evidence may result in waiver. See Annotation, Modern Status of Rules Governing Legal Effect of Failure to Object to Admission of Extrinsic Evidence Violative of Parol Evidence Rule, 81 A.L.R.3d 249 (1977). The only Florida case that I have uncovered relating to this question is Ross v. Florida Sun Life Ins. Co., 124 So.2d 892 (Fla. 2d DCA 1960) (a pre-Evidence Code case), in which the court held that a party could not raise the bar of the parol evidence rule for the first time on appeal, if no objection was made at the trial level. The court quoted approvingly from Higgs v. de Maziroff, 263 N.Y. 473, 189 N.E. 555 (1934), and McCormick on Evidence, each stating that in order to preserve a violation of the parol evidence rule for appellate review, a party must have raised the issue in some form or fashion before the trial court.
Although no contemporaneous objection to the reception of parol evidence was made at the bench trial below, appellant nonetheless filed a post-trial memorandum with the court prior to the entry of the final declaratory judgment order, in which appellant specifically raised the issue of the parol evidence rule and cited a number of cases in which courts have applied the rule to preclude introduction of extrinsic evidence to show a depositor's contrary intent to that stated in the joint bank account agreements. Thus, the issue was directed to the trial court's attention "in some fashion," as Professor McCormick advocates. I therefore regard the question as adequately preserved for our consideration.
Nor can I agree with the majority's alternative position, that even if the issue were properly before us, the language typewritten on the printed signature cards, reflecting that decedent was "adding son's name to account," created a sufficient ambiguity to permit the presentation of parol evidence. This language must be compared with other statements on the two cards. The accounts were established in the names of "Cecil King [depositor] or Cecil King, Jr. [co-depositor]." Moreover, of the ten empty boxes on the cards which indicate different types of accounts, the only two marked were designated as money market, and joint and several. The cards also permitted the withdrawal of funds on deposit upon the signature of either depositor. Finally, and most importantly, the standard terms and conditions of each of the two accounts expressly state: "As to each joint account ... all sums heretofore or hereafter deposited to their account, with all accumulations thereon, are and shall be owned by them as joint tenants with right of survivorship and not as tenants in common... ." (Emphasis added.) Considering all of the above language, I cannot agree with the majority that the words, "adding son's name to account," in any way created an ambiguity permitting the admission of extrinsic evidence showing a contrary intent to that clearly and expressly stated on the two cards.
Nevertheless, I acknowledge that there is a difference of views among the courts regarding the circumstances under which the parol evidence rule may be applied for the purpose of barring evidence extrinsic to signature cards establishing joint deposit accounts. See Annotation, Parol Evidence Rule as Applied to Deposit of Funds in the Name of Depositor and Another, 33 A.L.R.2d 569 (1954). The majority of jurisdictions addressing the question appear to be in agreement that if there is no evidence on the face of the signature card disclosing that both the depositor and co-depositor signed the card or deposit agreement, parol evidence is admissible for the purpose of showing the intention of the depositor in creating the account. Id. at 571. On the other hand, the courts are in disagreement as to the applicability of the rule when both the depositor and the co-depositor signed the signature card or agreement  as here. Some courts hold that if the card fails to reveal the intent of the depositor, parol evidence may be admitted to disclose such *604 intent. Id. If, however, the signature cards which both depositors signed clearly state that the accounts are joint with right of survivorship, the majority of jurisdictions addressing the issue appear to disallow extrinsic evidence for the purpose of showing a contrary intent. Id.
Notwithstanding the different positions of the various courts, I am of the view that the Florida legislature intended by its enactment of Section 658.56, Florida Statutes (1987)  creating a rebuttable presumption that the depositor's written agreements stated in a joint account vests the balance remaining therein in the survivor  that the presumptive effect of the statute would at the very minimum parallel the parol evidence rule, which, in the absence of fraud, duress, mistake, or mental incapacity, bars the admission of extrinsic evidence having the effect of varying or contradicting the terms of a complete and unambiguous contract.[2] My belief in this regard is supported by the language of section 658.56(1), providing: "Unless otherwise expressly provided in the signature contract card ... all such persons ... depositing funds in any such account shall be presumed to have intended that upon the death of any such person all rights ... in respect of such deposits and account ... shall vest in the surviving account holder or holders." (Emphasis added.)
Although, in my judgment, there is no ambiguity in the two joint bank accounts before us, I agree that parol evidence may be admitted for the limited purpose of establishing the existence or nonexistence of the agreements, as distinguished from allowing its admission for the purpose of varying the terms of the agreements. For example, such evidence may be received to show that the contract is a forgery, Mauldin v. Reel, 56 So.2d 918 (Fla. 1951), or to show that it was procured fraudulently or in violation of the law, Roper v. Florida Pub. Utils. Co., 131 Fla. 709, 179 So. 904 (1938).
Section 658.56(2) seems to codify the above exception to the applicability of the parol evidence rule by permitting the statutory presumption to be overcome by proof of fraud, undue influence, or clear and convincing proof of a depositor's contrary intent. The estate has not argued on appeal that the depositor's execution of the signature cards was a product of either fraud or the undue influence of some person. It instead argues that the decedent had no intention to create a joint account with the right of survivorship in the surviving tenant. In my judgment, the only conceivable legal basis for the estate's so theorizing, as applied to the facts at bar, is that the contract never came into legal existence due to the unilateral mistake of the depositor in executing a document providing for the right of survivorship.
In support of this argument, the appellee points to evidence showing that the elderly depositor, who was afflicted with Parkinson's disease, first asked, as a matter of his own convenience, one of his daughters to assist him with his personal records, monthly accounts, and bank statements. Upon her refusal, decedent next turned to his son-in-law, J.T. Williams, Jr., a designated co-personal representative of the estate, for the same assistance, who in turn deferred to the decedent's son (appellant). Subsequently, the decedent and appellant went together to the bank for the purpose of opening the accounts.
Reinforcing its argument that the decedent did not intend to create a joint account with the right of survivorship, appellee refers *605 to the short amount of time it took for the decedent to fill in the necessary signature cards, thereby inferring that the decedent failed to realize that he was establishing the accounts with the right of survivorship in the joint tenant. The evidence, however, also shows that the decedent during life was an excellent businessman who kept track of all of his assets and was competent until his death.
In my opinion, this case is similar in its facts to In re Estate of Kroeger, 490 S.W.2d 407 (Mo. Ct. App. 1972), in which it was recited that the depositor, who remained mentally alert well into old age, nevertheless, because of physical infirmity, sought help from her executor and attorney to assist her in the duties of writing out checks and maintaining proper balances in her savings and checking accounts. The attorney suggested to her that it would be helpful to have some other person undertake those activities. She thereafter requested a friend to serve as co-depositor, and two joint checking and savings accounts with rights of survivorship were opened in the names of both persons. Id. at 408-09.
In holding that the evidence failed to meet the clear and convincing standard necessary to overcome the presumption that the accounts were created with right of survivorship, the court relied in part upon a Missouri statute, which, like Florida's, established a rebuttable presumption that joint accounts opened according to the provisions of the statute are presumptively what they appear to be, but that the presumption may be rebutted by evidence showing that such was not the intention of the depositor. The court observed that "[w]hat may be rebutted is not the terms of the written contract, but its valid existence as such." Kroeger, 490 S.W.2d at 410 (emphasis added). The court stated that mistake was the only ground that appellant had alleged to rebut the presumption of a valid joint tenancy agreement, and concluded that the presumption was not rebutted, in that the evidence disclosed that the deceased was mentally competent and strong-willed; that she had had prior experience in maintaining joint bank accounts, having done so before with her late husband; and finally, that the terms of the joint tenancy agreements were clearly set out in the two signature cards, and there was no suggestion that the decedent's reading ability was deficient. The court thereupon held that the decedent chose the form of the bank account with full knowledge that the survivor would have any funds remaining in the accounts at the time of either tenant's death. Id.
Having reached the conclusion that the joint accounts were not the product of mistake, the court stated that once this element was eliminated from consideration, it was required then to consider only the actual terms of the written contract in arriving at the intention of the parties. Under such circumstances, parol evidence could not be considered to vary the "agreement or substitute a new and different agreement."[3]Kroeger, 490 S.W.2d at 410-11. Following the reasoning of the above case, I similarly conclude that the evidence at bar does not possess the clear and convincing character necessary to rebut the presumption that the decedent intended to do that which is expressly stated in the written agreements accompanying the accounts  create two joint bank accounts with a right of survivorship in the surviving tenant.
Nevertheless, appellee at bar devotes most of its brief, not to the argument that the depositor was mistaken in creating the joint accounts, but rather, because of the actions of the depositor and co-depositor, the presumption was overcome by evidence disclosing that the depositor did not manifest any present donative intent in opening the accounts, which was essential to pass a gift inter vivos to the joint tenant. In fact, most of the findings recited in the lower court's order apparently relate to the lack of any such donative intent. For examples, the court found that the surviving co-depositor had never placed any of his money in either account, never paid his own bills from either account, never asserted any *606 right to the two accounts during the initial inventory of the estate, and in fact had admitted that a sizable portion of the funds in one account were to be used for the purchase of a farm in his father's name only. In short, the son did nothing to exercise, in the court's words, "any dominion, control or possession as to the accounts." On the other hand, the depositor asserted complete control over the accounts in that he had drawn checks on them for the purpose of making gifts to both the co-depositor and the depositor's grandchildren, as well as to pay income taxes.
In my judgment, none of the above parol evidence was admissible for the purpose of contradicting the clearly and unambiguously stated terms of the two deposit accounts creating a right of survivorship. In so saying, I note that courts in a number of cases have stated that evidence showing a depositor had retained control over a joint account until his death, such as by retention of a passbook, was immaterial in that both the depositor and co-depositor had the right, as provided in the agreements, to make withdrawals from the account. See e.g., Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817 (1950); In re Fenstermaker's Estate, 413 Pa. 645, 198 A.2d 857 (1964); In re Voegeli's Estate, 108 Ohio App. 371, 161 N.E.2d 778 (Ct.App.), appeal dismissed, 169 Ohio St. 237, 158 N.E.2d 893 (1959).
Indeed, as stated in In re Voegeli's Estate, the fact that a decedent may have retained the right of withdrawal, and on several occasions exercised it, was irrelevant to the co-depositor's right to the funds upon the death of the depositor, which had vested in praesenti, pursuant to the parties' contract, and pursuant to an Ohio statute authorizing contracts establishing the right of either joint depositor to receive payment in whole or in part of such deposit during life, and of the survivor to the balance upon the death of the other. The court stated that the acts of the depositor during his lifetime "may tend to show that ... [he] desired to retain complete control of the accounts during life, but they do not contradict or overcome the clear and unambiguous intention of decedent expressed in his contracts of deposit to create a then vested survivorship interest in such accounts in his children [co-depositors], which would inure to them or survivors upon his death." In re Voegeli's Estate, 108 Ohio App. at 380, 161 N.E.2d at 785. Thus, evidence that a decedent-depositor may have exercised complete dominion and control over a joint account during the depositor's lifetime is not the clear and convincing evidence required to rebut the presumption of survivorship clearly expressed in the joint deposit agreements.[4]
Additionally, whether or not a co-depositor is aware that he is, in fact, a surviving beneficiary of a joint bank account is immaterial to the validity of the establishment of the account if the terms of the account are clearly expressed in the contractual agreement. As the Supreme Court of Kansas observed in Agrelius v. Mohesky, 208 Kan. 790, 494 P.2d 1095 (1972):
It may be that Clair [the co-depositor] did not have a clear understanding of the import or legal effect of the joint tenancy agreement and that he did not know the funds belonged to him as the surviving joint tenant until he was so advised by other parties sometime after his mother's death. However, his lack of comprehension had no bearing on the contract. The all-important factor is the clarity with which the intent of the grantor is expressed. The intention of Mrs. Agrelius [the depositor], it clearly appears, was to create a joint tenancy with right of survivorship. We hold that the savings account was held in joint tenancy and that the plaintiff [co-depositor] ... is entitled thereto as the survivor.
Id. 494 P.2d at 1100.
Applying the above rule to the case at bar, the son's initial inclusion in the estate's *607 inventory, as co-personal representative, of the two joint bank accounts, for whatever reason, is immaterial to a consideration of what the depositor  not the co-depositor  understood. The son's mistaken perception of the nature of the account is therefore not evidence that can be allowed to vary the clearly stated terms of the contract.

II.
I also conclude that even if appellant failed to preserve for appellate review the trial court's error in admitting parol evidence, the extrinsic evidence so admitted nonetheless did not meet the evidentiary standard by clearly and convincingly rebutting the presumption that the depositor intended to create a right of survivorship to the funds in the surviving joint tenant. For example, in In re Fenstermaker's Estate, 413 Pa. 645, 198 A.2d 857 (1964), the court held that, despite the co-depositor's failure to object to the introduction of parol evidence, the co-depositor's testimony reciting that the decedent had told her that she was to have everything if anything happened to him, did not rebut the presumption of an immediate inter vivos gift, and it further concluded that the decedent's statement was consistent with the right of survivorship provision of the deposit agreement.
Furthermore, the question of whether the decedent in the case at bar intended to make a gift inter vivos, in compliance with all the formalities of such a gift, by opening the two joint bank accounts, is an immaterial consideration in light of the provisions of section 658.56(2), providing, inter alia, that in the absence of clear and convincing proof of a contrary intent, any amount held in deposit shall vest in the surviving account holder, "notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person and notwithstanding that the provisions hereof may constitute ... a vesting or disposition of property... testamentary in nature." (Emphasis added.) Thus, if relevant, the extrinsic proof adduced by the estate may arguably have clearly and convincingly rebutted the presumption that the decedent had the present intention to create a gift inter vivos in his son,[5] but this proof did not clearly and convincingly rebut the presumption that the decedent intended to make a gift testamentary in nature. In so saying, it is helpful to recount a short history of the events leading to the enactment of section 658.56.
It appears that section 658.56 (originally numbered Section 659.291, Florida Statutes, and enacted as part of the Florida Banking Code in 1971), and Section 665.271, Florida Statutes (now Section 665.063(1), Florida Statutes (1987), enacted as part of the Florida Savings Association Act of 1965), were created for the purpose of clarifying the question of entitlement to assets in joint accounts with rights of survivorship, due to the uncertainty of the law in regard to such accounts. In re Estate of Gainer, 466 So.2d 1055 (Fla. 1985); Rosecrans v. Eden, 538 So.2d 970 (Fla. 5th DCA 1989); Morgan v. McLaughlin, 260 So.2d 890, 892 (Fla. 2d DCA 1972) (Mann, J., dissenting). As noted in In re Estate of Gainer, 466 So.2d at 1057-58, the legislature intended to "put to rest the uncertain results attendant litigation predicated on the theory of gifts or other theories which had been utilized by courts." The two statutes apparently addressed cases such as Spark v. Canny, 88 So.2d 307 (Fla. 1956), in which the Florida Supreme Court held that if a joint bank account with right of survivorship is established with the funds of one person, the presumption arises that upon the death of one of the tenants, a gift of the funds remaining was intended to be passed to the survivor; however, such evidence is rebuttable and may be overcome by clear and convincing evidence of a contrary intent. Id. at 311-12. The court in Spark was of the view that *608 the donative intent of the depositor was required as a condition precedent to the creation of a joint estate with right of survivorship, and, because clear and convincing evidence showed that the depositor had established the account without donative intent, the presumption of survivorship was rebutted.
A case decided four years after Spark, Chase Fed. Savs. & Loan Ass'n v. Sullivan, 127 So.2d 112 (Fla. 1960), placed even greater restrictions than had Spark on the depositor's creation of a joint deposit account with right of survivorship. In Sullivan, the sole owner of a savings account had converted the funds therefrom to a joint account in her name and that of a friend, with right of survivorship, for the apparent purpose of utilizing the joint account as a means of effectuating a testamentary disposition, and not with the intent of making a gift inter vivos. In holding that the opening of the account was an invalid testamentary attempt to pass property upon death, the court stated:
[W]e think there must exist an intention that each party shall have a present, equal right to withdraw the funds... . In applying the test of a gift inter vivos ... the rules have been modified by the nature of a joint fund but the basic elements are the same: donative intent, delivery  not the money, in specie, in the joint fund, but a gift of an undivided interest in the funds, the surrender of an equal right to withdraw the funds, and acceptance by the donee.
Id. at 114-15.
Thus, while Sullivan upheld the existence of the presumption established by the court in Spark, it nonetheless found that the presumption was rebutted by clear and convincing evidence, in that the delivery and surrender of a present equal right to withdraw in the co-tenant was not intended. Consequently, if the evidence showed only that the intention of the depositor was to make a gift effective upon death, the establishment of a joint account was rendered ineffective as an invalid attempt to pass property without complying with the Statute of Wills. As one commentator observed:
The deviation from the Spark theory unfortunately invites litigation by allowing a claimant to contravene the depositor's express written desires to bestow the right of survivorship on his co-tenants through a showing by parol evidence that the depositor did not intend a present gift. As a practical matter the Sullivan theory potentially yields a harsh result because the depositor, who has left documents expressing clear testamentary intent, has died before the question of "present" intent arises.
Note, Survivorship Rights in Joint Accounts 24 U.Fla.L.Rev. 476, 485 (1972) (footnote omitted). As a result, a rigid application of the Sullivan rule had the effect of disregarding the depositor's intent in distributing his or her estate:
For example, if the depositor is said to have testamentary intent in a given case, it is likely that he was relying on the survivorship right in the joint account as an integral part of his testamentary scheme. Denial of that right invokes the rigid rules of intestate succession, thwarting his intent except in cases where the two takers coincide. If the depositor executes a will after he established the account, he will probably exclude or adjust the co-tenant's interest in the estate under the will by the funds to be received under his survivorship right. By voiding the survivor's interest in the account the beneficiaries under the will would receive more than the decedent intended at the expense of the co-owner of the account.
Id. (footnote omitted).
Other cases voiding attempts by depositors to effect a disposition of their property by means of a joint account include Wood v. McClellan, 247 So.2d 77 (Fla. 1st DCA 1971) (presumption of survivorship rebutted due to delay of co-depositor in accepting the gift of the deposit account); Demps v. Graham, 157 So.2d 534 (Fla. 1st DCA 1963) (Spark presumption of survivorship rebutted by evidence showing that co-tenant failed to withdraw funds in joint account *609 during lifetime of depositor, thereby leading to conclusion that depositor had no present intention to surrender any portion of the funds in the account until depositor's death); and North Shore Bank v. Shea, 148 So.2d 60 (Fla. 2d DCA 1963) (summary judgment in favor of co-depositor reversed on ground that there existed a question of fact as to whether the deposit constituted a gift inter vivos or an attempted testamentary transfer, notwithstanding that no withdrawal restriction appeared in any of the account instruments).
Considering, then, the legislative purpose behind the enactment of section 658.56, which was to repeal case law that had applied the theory of gifts to invalidate survivorship clauses in joint banking accounts, I regard the analysis approved by the Supreme Court of Indiana in Seavey v. Estate of Fanning, 263 Ind. 414, 333 N.E.2d 80 (1975), to be most applicable to the case at bar. In Seavey, the court upheld the opinion of an Indiana Court of Appeals in Seavey v. Estate of Fanning, 161 Ind. App. 380, 315 N.E.2d 718 (Ct.App. 1974), which had rejected the application of the gift theory to joint accounts earlier espoused by that court, and instead applied contract law, thereby making the co-depositor a third-party donee beneficiary of the contract executed between the depositor and the bank. The rule approved in Seavey was the subject of further comment in Robinson v. Fickle, 167 Ind. App. 651, 340 N.E.2d 824 (Ct.App. 1976), in which the court observed that the Seavey decision had "effectively eliminate[d] the requirement of a delivery required under the gift theory. It is not an over-simplification to say, however, that `the transaction is, in reality, a gift and that the contract is the substitute for delivery.'" Id. 340 N.E.2d at 828 (quoting Kepner, The Joint & Survivorship Bank Account, 41 Cal.L.Rev. 596, 604).
Finally, in addressing the argument that the decedent had attempted a testamentary disposition of her property which was therefore invalid, the court responded:
We necessarily conclude, therefore, that even if one creates a third party beneficiary contract right in a joint tenancy in the expectation that the asset (to the extent that it remains at the donor's death) will pass directly to the surviving joint tenant without regard to the laws governing testamentary dispositions, such subjective purpose will not defeat the ownership claim of the surviving joint tenant. As stated in Blanchette v. Blanchette (1972), 362 Mass. 518, 287 N.E.2d 459, 463-464, relied upon in Fanning, supra:

"We recognize that under the cases cited the arrangement of the parties provides a substitute for a will. But we see no harm in that. `If an owner of property can find a means of disposing of it inter vivos that will render a will unnecessary for the accomplishment of his practical purposes, he has a right to employ it. The fact that the motive of a transfer is to obtain the practical advantages of a will without making one is immaterial.'"
* * * * * *
"Our law in this situation is in harmony with that in many other States. `The formal requisites of wills serve two main purposes: to insure that dispositions are carefully and seriously made, and to provide reliable evidence of the dispositions. Those purposes are adequately served by the institutional setting and the signed writing normally involved in taking out insurance, opening a bank account, buying United States Savings Bonds, or entering a government pension system.'"
Robinson, 167 Ind. App. at 667, 340 N.E.2d at 834 (citations omitted).
Thus, given the legislative intent behind the enactment of section 658.56  to alleviate the inequities and uncertainties created by existing case law  the actions and inactions by both the depositor and co-depositor in the case at bar are entirely consistent with the intent clearly expressed in the joint deposit agreements: to create a right of survivorship in the surviving cotenant upon the death of the other. As a result, all of the evidence offered by the estate had the effect of only rebutting the presumption that the depositor, in opening the joint accounts, had the present intent to make a gift inter vivos to the co-depositor. But because evidence of a donative intent *610 and the elements of a gift inter vivos have been explicitly declared by section 658.56 to be irrelevant to proof of an intent contrary to the presumption of survivorship created by the opening of a joint account,[6] the evidence offered by the estate, under the circumstances, lacked the clear and convincing character necessary to rebut the presumption. Accordingly, no credible evidence was introduced sufficient to sustain a finding as to the nonexistence of the presumed fact that the joint account was created with the intention of vesting the remaining balance in the surviving account holder. The trier of fact was therefore required to assume the existence of such fact. See Section 90.302(1), Florida Statutes (1987). See also C. Ehrhardt, Florida Evidence, § 302.1 (2d ed. 1984).
The presumption of survivorship in this case was not rebutted. As a result, the trial court erred in ruling that the funds remaining in the two joint bank accounts upon the death of the depositor were assets of the estate.
NOTES
[1] See Section 90.104(1)(a), Florida Statutes (1987).
[2] A similar conclusion was reached by an Indiana Court of Appeals in Robinson v. Fickle, 167 Ind. App. 651, 656, 340 N.E.2d 824, 828 (Ct. App. 1976). Noting that the Indiana Supreme Court in Seavey v. Estate of Fanning, 263 Ind. 414, 333 N.E.2d 80 (1975), had previously approved the rule applying the theory of contract, rather than that of gift, to joint deposit accounts, the court observed that although a party could still, under certain limited circumstances, offer evidence attempting to rebut the presumption that the depositor intended to establish a joint tenancy relationship by opening a joint account, nonetheless, if the words of the contract were clear and unambiguous, "parol evidence concerning donative intent ... should be admitted only when the terms of the contract permit a reasonable construction which negatives the donative intent and the intent to create a right of survivorship in the entirety of the property." Robinson, 167 Ind. App. at 657, 340 N.E.2d at 829 (emphasis added).
[3] For a similar result, see also In re Furjanick's Estate, 375 Pa. 484, 100 A.2d 85 (1953).
[4] In fact, under a theory of contract, as opposed to that of gift, a depositor's retention of control over a joint deposit account during his lifetime, and a co-depositor's failure to exercise any control, are irrelevant considerations, because such evidence relates only to delivery  an element essential to the establishment of a gift, not a contract. See Robinson v. Fickle, 167 Ind. App. 651, 661-65, 340 N.E.2d 824, 831-32 (Ct.App. 1976).
[5] As more fully explained later in this opinion, I do not consider the extrinsic evidence relied upon in the lower court's order as establishing a contrary intent to that stated in the depositor's agreements to be relevant evidence under a contract theory, which I consider has replaced the gift theory by virtue of the enactment of section 658.56.
[6] My conclusion in this regard corresponds with the following comments:

The basic import of the new statute is to create a presumption of the intent of the deceased co-tenant to vest title in the survivors of the joint account upon his death. The presumption is made rebuttable only by: (1) proof of fraud; (2) proof of undue influence; or (3) clear and convincing proof of contrary intent. The absence of proof of "donative intent or delivery, possession, dominion, control or acceptance" does not affect the rights of any party. Moreover, proof that the transaction was "testamentary in nature" does not defeat the co-tenant's rights.
Note, Survivorship Rights in Joint Accounts, 24 U.Fla.L.Rev. 476, 495 (1972) (footnotes omitted).