601 So.2d 1165 (1992)
In re ESTATE OF Lettie V. COMBEE, Deceased.
Linda Rae FARMER, et al., Petitioners,
v.
Irma A. WALKER, et al., Respondents.
No. 78348.
Supreme Court of Florida.
May 28, 1992.
H. Edward Dean, Susan E. Dean, Jonathan S. Dean and Angela T. Miller of Dean and Dean, P.A., Ocala, for petitioners.
Jerry A. DeVane of DeVane, Munson, Allen & Yancey, Lakeland, for respondents.
*1166 David T. Smith, Professor of Law, University of Florida, Gainesville, for amicus curiae.
GRIMES, Justice.
We review In re Estate of Combee, 583 So.2d 708 (Fla. 2d DCA 1991), because of its conflict with In re Estate of Gainer, 579 So.2d 739 (Fla. 1st DCA 1991). We have jurisdiction under article V, section 3(b)(3) of the Florida Constitution.
On August 21, 1988, Lettie V. Combee died leaving behind a will which placed the bulk of her estate in trust for the benefit of her two grandchildren, Linda Farmer and Raymond Combee (petitioners). The will named Ms. Combee's adult nieces, Irma Walker and Dorothy Collins (respondents), as personal representatives and cotrustees of the trust. When she died, Ms. Combee owned real estate valued in excess of $500,000 as well as several bank accounts. Two of these, which are the subject of this dispute, were a money market account and a savings account. Both were joint accounts with right of survivorship in which the respondents were signatories.
The trial focused on the presumption created by section 658.56, Florida Statutes (1987), concerning joint accounts with right of survivorship. The trial court ruled that the presumption had been overcome by clear and convincing evidence that the decedent's intent was not to create survivorship accounts. The district court of appeal reversed. The appellate court reasoned that the intent presumed by the statute was to vest the money in the surviving account holders at the time of death and held that the evidence was insufficient to rebut this presumption. The court acknowledged possible conflict with In re Estate of Gainer.
Joint accounts with right of survivorship have been a frequent source of litigation in Florida. In Spark v. Canny, 88 So.2d 307 (Fla. 1956), this Court held that where a joint bank account with right of survivorship was established with the funds of one person, a gift of the funds remaining in the account at the death of the creator of the joint account was presumed, but that such presumption was rebuttable and could be overcome by clear and convincing evidence to the contrary. In a subsequent case, the Court held that the presumption had been rebutted by a showing that the sole intent of the person who created the joint account was to make a gift effective upon her death. Chase Fed. Sav. & Loan Ass'n v. Sullivan, 127 So.2d 112 (Fla. 1960). We reasoned that establishment of the joint account under these circumstances was an ineffectual attempt to do that which could only be accomplished by a last will and testament. In order for the survivor to prevail, it had to be shown that the creator intended a gift inter vivos at the time the account was opened.
Subsequent cases produced such diverse results that one commentator was prompted to characterize them as a "muddle." Richard B. Stephens, Jr., Survivorship Rights in Joint Accounts, 24 U.Fla.L.Rev. 476 (1972). The uncertainty created grave implications to estate planners and financial institutions as well as those who wished to utilize this informal dispositional tool to make postdeath distributions. Richard E. Warner, Joint Accounts and Decedent's Estates  An Update, Fla.B.J., July/Aug. 1987, at 45. Beginning in 1965, the legislature sought to solve the problem by legislation. First, it enacted a statute applicable to savings and loan associations which allowed the written savings agreement to be conclusive in the absence of fraud or undue influence. Ch. 65-463, Laws of Fla. (codified at § 665.15(2), Fla. Stat. (1965)). This section was repealed by chapter 69-39, Laws of Florida, and a similar provision was enacted. See § 665.063, Fla. Stat. (1987) (originally enacted by ch. 69-39, § 27, Laws of Fla., codified at § 665.271, Fla. Stat. (1969)). In 1971, the legislature enacted a somewhat similar statute relating to banks which is now section 658.56, Florida Statutes (1987). See ch. 71-205, § 1, Laws of Fla. (codified at § 659.291, Fla. Stat. (1971)). The creation of a joint bank account with right of survivorship creates a presumption that the depositor of the funds intended that upon his *1167 or her death the funds remaining in the account should vest in the survivors. As in the case of savings and loan associations, the presumption may be overcome by proof of fraud or undue influence, but in the case of banks, it may also be overcome by clear and convincing proof of a contrary intent. A constitutional equal protection attack on the difference between these two statutes was rejected in In re Estate of Gainer, 466 So.2d 1055 (Fla. 1985).[1]
Significantly, section 658.56(1) eliminated the requirement of showing a gift inter vivos by providing that the creator of a joint account "shall be presumed to have intended that upon the death of any such person all rights, title, interest, and claim in, to, and in respect of such deposits and account ... shall vest in the surviving account holder or holders." The presumed intent is not an intent to make an inter vivos gift but rather an intent that the remaining account holders receive the funds remaining in the account when the depositor dies. The statute further provides that the presumption will prevail
notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person and notwithstanding that the provisions hereof may constitute or cause a vesting or disposition of property or rights or interests therein, testamentary in nature, which, except for the provisions of this section, would or might otherwise be void or voidable.
§ 658.56(2). This language reflects a clear legislative intent to supersede the rationale of Spark and Chase Federal. Now the creation of a joint account with the intent that the funds be transferred to the survivor only upon death no longer violates the statute of wills. We agree with the court below that by passing this statute the legislature intended "for this problem to be solved under a contract theory as opposed to the earlier gift or tenancy theories."[2]In re Estate of Combee, 583 So.2d at 711. A recent commentary by Professor Smith supports our conclusion. David T. Smith, Joint Accounts in Financial Institutions or the Case of "Surviving Party v. Personal Representative," Fla.B.J., Apr. 1992, at 50.
For purposes of resolving this case, the following recitation taken from the opinion below provides a fair statement of the evidence subject to the caveat expressed in footnote 2:
B. Prior Bank Accounts

In 1984, Ms. Combee had signed an earlier will which named Jerry Reynolds and Dollie Smith as copersonal representatives. It appears that Ms. Combee revoked this will when Mr. Reynolds stated that he no longer wished to be her personal representative and when Ms. Smith was no longer able to serve.
When the prior will was prepared, Ms. Combee established a money market account at Peoples Bank of Lakeland. The signature contract card for that account states that it was opened on December 4, 1984, and that it was a personal account. Immediately above Ms. Combee's signature, the card contains two boxes which state "no survivorship intended" and "joint account-with survivorship." The joint account option is clearly marked with two typed "x"s. The other names on the account were Mr. Reynolds and Ms. Smith. The card reflects, however, that Mr. Reynolds and Ms. Smith were deleted from the account on December 13, 1984, about two weeks after it was opened.[3]

*1168 Ms. Combee had an active checking account at the Peoples Bank when the money market account was opened. On the same day that the money market account was opened, Mr. Reynolds and Ms. Smith were added to the checking account. On December 13, 1984, this account was also modified so that Mr. Reynolds and Ms. Smith were deleted from the account, but a power of attorney was noted on the contract card. Thus, it is clear that Ms. Combee took affirmative steps to prevent these copersonal representatives from having a joint interest in her accounts. The reason for this change is not explained within the record, but the record does indicate that Ms. Combee was handling her own banking during this period.
C. Bank Accounts Subject to This Dispute

On January 20, 1987, two weeks before the probated will was executed, Ms. Combee added Ms. Walker and Ms. Collins to her checking account. There is no dispute that the contract for this checking account only allowed the two women to write checks and did not make them joint owners with a right of survivorship.
On February 9, 1987, a few days after the probated will was executed, Ms. Combee opened a money market account. This account created a joint account with Ms. Walker and Ms. Collins. The signature contract card contains virtually identical information as the money market account card Ms. Combee had signed two years earlier naming Mr. Reynolds and Ms. Smith as copersonal representatives. The signature card clearly indicates that it is a joint account with survivorship. The contract states:
OWNERSHIP OF ACCOUNT  The following provisions explain the rules applicable to this account depending on the form of ownership specified on the reverse side. Only the portion corresponding to the form of ownership specified will apply... . Joint Account  With Survivorship  Such an account is issued in the name of two or more persons. Each of you intend that upon your death the balance in the account (subject to any previous pledge to which we have consented) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship.
This time it appears that the copersonal representatives remained on the account and Ms. Walker wrote checks on the account during the last eighteen months of Ms. Combee's life. At the time of Ms. Combee's death, the money market account contained approximately $40,000.
Although the record does not contain the written contracts, the parties stipulated that Ms. Combee also had a savings account at Peoples Bank. The contract for this account included a right of survivorship for Ms. Walker and Ms. Collins. At the time of Ms. Combee's death, the savings account balance was approximately $3000.
The banking records were introduced by stipulation. No representative of the bank provided any testimony in this case. Thus, there is nothing in this record to establish the content of any discussions that Ms. Combee may have had with bank representatives.
D. The Testimony

In support of their position that Ms. Combee clearly and convincingly had an intent concerning the money market account and the savings account, other than that expressed in those written contracts, the beneficiaries called four witnesses.
First, one of the grandchildren testified. She had seen her grandmother four times in the preceding four years. She knew her grandmother was not extravagant and did not give large sums of money to anyone. She testified at length concerning her own need for money from the estate.
Mr. Reynolds testified that he was a forty-year-old nephew with training in *1169 business and finance. During the two years that he was named as personal representative in Ms. Combee's will, he saw her once or twice. He did not handle her affairs. It was not his understanding that he was to receive an interest in the bank accounts if Ms. Combee died. Because his name had been deleted from these accounts, his understanding of his rights under the accounts, of course, is consistent with the written terms of the accounts for all but the first two weeks of his tenure as the designated personal representative.
Ms. Collins testified that she was a niece and that Ms. Combee had been like a second mother when she was a child. She readily admitted that she did not regard the money in the account as hers while Ms. Combee was living, and that she had never placed any of her own money into the account while Ms. Combee was alive. Ms. Combee never told her that the account would become her property, but Ms. Combee did tell her that she would be well compensated for all of her help during the last months of Ms. Combee's life. Ms. Collins testified that Ms. Combee was alert and knew "exactly" where "every penny" was until the last few months of her life.
Ms. Walker testified that she was also a niece and that she had visited Ms. Combee almost daily during the last eighteen months of Ms. Combee's life. She had written checks and helped Ms. Combee with her business affairs during that time. Ms. Combee had told her that the money in these accounts would belong to the two nieces when she died. When Ms. Combee died, Ms. Walker used money from the checking account to pay most of the final medical bills and burial expenses. She paid some of these bills from the money market account, but she regarded the remainder of those funds and the funds in the savings account as joint assets of the two surviving women.
Ms. Walker and Ms. Collins called a single witness, a neighbor who lived on Ms. Combee's property. The neighbor testified that she had known Ms. Combee for nine years and that Ms. Combee was a frugal woman. Ms. Combee had told the neighbor that the two nieces would be well taken care of when she died. Ms. Combee never told this neighbor that the joint accounts would be the source of this compensation.
In re Estate of Combee, 583 So.2d at 709-10.
Applying the law as we interpret it to the foregoing facts, it is evident that the petitioners fell far short of their burden of rebutting the statutory presumption by clear and convincing evidence. While the evidence may not have supported a gift inter vivos, this is no longer relevant. There is virtually no evidence which would indicate that Ms. Combee did not intend for Ms. Walker and Ms. Collins to receive the funds which remained in the accounts at her death. Ms. Combee's expressed intent to provide for her grandchildren does not evince a contrary intent because she left ample assets in the estate which can be liquidated for that purpose. The fact that the earlier personal representative viewed his position in a different light does not demonstrate Ms. Combee's intent, particularly when his role in helping her during her lifetime was much different than that of the respondents.
We approve the decision of the court below. However, our analysis is contrary to the rationale, if not the holding, of In re Estate of Gainer, 579 So.2d 739, which stressed the lack of proof of a gift inter vivos in concluding that the statutory presumption had been rebutted. Thus, we disapprove that case to the extent that it is inconsistent with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, KOGAN and HARDING, JJ., concur.
NOTES
[1] Although the deceased coincidentally had the same last name, this case is unrelated to In re Estate of Gainer, 579 So.2d 739 (Fla. 1st DCA 1991).
[2] Contrary to respondents' argument, however, we also agree that in exchange for the creation of a presumption which shifts the burden of proof to the estate under section 90.304, Florida Statutes (1987), and increases the burden to a clear and convincing standard, the estate is entitled to introduce parol evidence.
[3] There is a notation on the card dated December 13, 1984, which states, "Delete Jerry and Dollie." However, petitioners argue that the testimony of Jerry Reynolds and the statement of respondents' trial counsel reflect an understanding that Reynolds and Smith remained on the accounts until 1987. Because there was some doubt over this issue, we accept the petitioners' position so as to give them the benefit of the trial court's judgment in their favor.