GRIFFIN, J.
Appellant, Karen Caputo [“Karen”], appeals several orders of the trial court pertaining to her objections to the probate inventory filed by her brother, Stephen Nouskhajian [“Stephen”], the personal representative of their mother’s estate. At issue is whether Stephen could withhold from the estate and keep for himself the funds from certain bank accounts which were held jointly in his name and his mother’s with a right of survivorship.
Stephen, son and personal representative for Rouzan L. Nouskhajian [“Rouz-an”], filed a petition for administration of his mother’s estate on October 16, 2001. Rouzan’s will contained several provisions pertinent to this appeal: Stephen was named to be Rouzan’s personal representative and Richard Leigh, her attorney [“Leigh”], the alternate.[1] Rouzan devised and bequeathed her residence located at 1311 Baldwin Drive to her daughter, Karen. Rouzan bequeathed one-half of the remainder of her estate to Stephen and directed that the other one-half fund a trust to support her mentally ill daughter, Zabelle Schlicter [“Zabelle”].
On March 14, 2002, Stephen filed a petition to determine the homestead status of the residence. In an order dated May 22, 2002, the probate court found that the mother’s residence on Baldwin Drive constituted the homestead of the decedent, the property was subject to devise, and Rouzan had devised the property to Karen.
Stephen then filed an inventory of all property of Rouzan’s estate. The inventory identified only the homestead property and $5,000 in miscellaneous assets. Karen filed an acceptance as successor trustee of Zabelle’s trust. She then filed her objection to the probate inventory on the ground that certain bank accounts and financial assets were not listed that were *268 intended by decedent to fund the trust for Zabelle.
Before her death, Rouzan had numerous bank accounts. Her Bank of America (Na-tionsBank) account was titled in her name as well as the names of Raymond Lazarí-an[2] and Stephen. The approximate balance in this account was $104,552.76.
Rouzan also set up an account with Washington Mutual Bank. Both she and Stephen signed the account agreement which identified it as:
[a] joint account with right of survivor-ship in our names. Upon the death of one or more of us, the funds in this account become the property of the survivor(s).
As of September 18, 2001, this account’s balance was $116,059.28. Rouzan had another account with Washington Mutual on which both Rouzan and Stephen were signatories and which also contained a statement that it was a joint account with right of survivorship. As of September 26, 2001, the balance in this account was $37,962.79. Rouzan’s account with Fairwinds Credit Union was also a joint account with Stephen with right of survivorship. Finally, Rouzan had a personal checking account at Citizens National Bank. At the time she died, there was $1,200 in the account. Stephen included this last account in the inventory.
On August 15, 2002, Stephen gave a deposition and testified that his mother had told him that he could use money in the accounts if he ever needed it, so he considered the funds to be his. He closed out these accounts after his mother died and put the funds in a joint account he held with his wife.
Stephen acknowledged that .his mother intended to fund Zabelle’s trust with half of the money in the above-described bank accounts. At the time Rouzan signed her will, he heard her say in the presence of Leigh that it was to be funded with the money in her bank accounts.
Stephen testified that he did not include the bank accounts in the inventory because he did not believe they were part of the estate. Although at the time she made the will it was his mother’s intention to fund the trust with the money in the bank accounts, he later concluded she had changed her mind because she told him that he could use the money in the accounts.
The record contains several letters that Rouzan wrote expressing her intent that the three children share her assets equally upon her death. In a letter dated August 2000 to Karen, Rouzan wrote to Karen that she would get the house and that “Steve will put all assets including [the] house together and divide it by three, and if money is there you will get cash to equalize.” It appears that this was a reference to her plan that each child receive approximately $140,000. Karen was to receive the house, worth about $140,000, and Steve and Zabelle’s trust were to split approximately $284,000 in cash.
On August 28, 2002, the trial court held a preliminary hearing on Stephen’s objection to Karen’s attempt to depose Leigh in order to discover evidence as to Rouzan’s intent. The court entered an order finding that, at the forthcoming final hearing on the objections to probate inventory, it would not allow parol evidence to be admitted to establish decedent’s intent concerning the bank accounts because the documents establishing these accounts were unambiguous. The court also found that decedent’s intent was irrelevant as to the Bank of America account because Raymond Lazarían had established the account, and, therefore, only his intent was *269 relevant. Finally, the court ruled that Leigh’s testimony was protected by the attorney-client privilege and was neither discoverable nor admissible.
Subsequently, the judge who made these rulings, retired and was succeeded by a successor judge. That judge determined not to revisit any of these earlier rulings. Accordingly, he entered an order denying Karen’s objection to the inventory and denying her motion to remove Stephen as personal representative.
Karen argues that the trial court erred when it excluded as parol evidence Stephen’s admissions that Rouzan had intended the jointly held bank accounts to be included in the estate to fund the trust. Karen maintains that section 655.79, Florida Statutes (2000), allows the presumption permitting accounts to pass to a surviving account holder to be overcome by clear and convincing evidence of contrary intent. Stephen contends that this is not a “presumption” case because the documents executed when the accounts were originally set up are clear that a right of survivorship ivas created. Stephen argues that parol evidence would be available only if these account documents were ambiguous, but they are not.
We reject Stephen’s position on this issue for two reasons. First, the statute itself makes clear that it applies even where there are unambiguous bank documents setting up the account with a right of survivorship. The statute was enacted to validate such transfers, previously held to be ineffectual under the statute of wills, and is controlling in this case. It specifies that, absent a provision in the writing that negates a right of survivorship, a surviv- or’s right is presumed, but can be overcome by clear and convincing evidence of a contrary intent. The statute recognizes that such accounts are commonly established jointly for a myriad of reasons not associated with an intent to divest the account owner’s estate of any right to the account in the event of death.
Second, the Supreme Court of Florida in In re Estate of Combee, 601 So.2d 1165 (Fla.1992), held that, in such disputes over the inclusion of bank accounts in a probate estate, parol evidence is admissible to prove the decedent’s intent. In Combee, the decedent died testate, leaving the bulk of her estate, which included two bank accounts, to two grandchildren. In its decision, the court specifically noted that “[t]he signature card clearly indicates that it is a joint account with survivorship.” Id. at 1168. The trial court had ruled that the presumption created by section 658.56, Florida Statutes (1987), had been overcome by clear and convincing evidence that the decedent’s intent was not to create survivorship accounts. Id. at 1166. The supreme court said that the creation of a joint bank account with right of survivor-ship created a presumption that the depositor of the funds intended that, upon his or her death, the funds remaining in the account would vest in the survivors. Id. at 1166-67. The supreme court also spoke to the issue of parol evidence:
Contrary to respondents’ argument, however, we also agree that in exchange for the creation of a presumption which shifts the burden of proof to the estate under section 90.304, Florida Statutes (1987), and increases the burden to a clear and convincing standard, the estate is entitled to introduce parol evidence. (emphasis added)
Id. at 1167 n. 2. In Combee, it is apparent that the supreme court examined parol evidence regarding the decedent’s intent in reaching its decision. Id. at 1168-69.
The First District’s decision in King v. Estate of King, 554 So.2d 600 (Fla. 1st DCA 1989), also supports this outcome. In King, the court addressed the issue of whether the trial court erred when it determined that two bank accounts were as *270 sets of the decedent’s estate and did not pass by right of survivorship. Id. The appellate court concluded that the trial court did not err in finding that the statutory presumption was rebutted by clear and convincing evidence of the decedent’s contrary intent, or in permitting parol evidence to determine the decedent’s intent. Id. The court explained:
The testimony presented below included parol evidence offered to show that the accounts were not intended to pass by survivorship. Such parol evidence generally may not be used to modify the terms of a complete and unambiguous written agreement. However, section 658.56 authorizes such proof in this case with regard to the statutory presumption which may be rebutted by proof of a contrary intent.
Id. at 601-02. The trial court erred in disallowing parol evidence of Rouzan’s intent.
We agree with Karen that the trial court also erred in finding that the intent of the decedent was irrelevant to the Bank of America/NationsBank account. At the time of Raymond Lazarian’s death in June of 2000, his intent concerning the account as reflected in his will was fulfilled when the assets of his estate were distributed. At that point in time, the money became Rouzan’s, and her intent became relevant. Thus, the trial court erred in determining her intent was not relevant.
We also vacate the lower court’s order specifying that communications between Rouzan and her attorney, Leigh, are neither discoverable nor admissible in evidence because of the attorney-client privilege. Section 90.502(4)(b), Florida Statutes (2000), authorizes the introduction of an attorney’s testimony regarding evidence of the decedent’s intent when two claimants are claiming the same bank accounts through the decedent who was the attorney’s client. Section 90.502 provides:
(4)There is no lawyer-client privilege under this section when:
[[Image here]]
(b) A communication is relevant to an issue between parties who claim through the same deceased client.
Moreover, it appears that key communications were either not covered by the privilege or the privilege may have been waived.
Last, Karen argues that the trial court erred in not removing Stephen as personal representative because he held an interest adverse to the estate by claiming virtually the entire corpus of the estate for himself. We assume the trial court denied this motion because the earlier rulings of the prior judge settled the bank account issue in Stephen’s favor. In light of our disposition on appeal, we remand for the trial court to reconsider this issue.
REVERSED and REMANDED.
PLEUS and TORPY, JJ., concur.

. Richard Leigh was named trustee, but he subsequently filed a notice of declining to serve.

. Raymond was Rouzan’s brother who had died in June 2000.