917 So.2d 295 (2005)
Cristina VARELA, a/k/a Cristina B. Varela, Appellant,
v.
Carlos Alberto BERNACHEA, Appellee.
No. 3D05-105.
District Court of Appeal of Florida, Third District.
December 21, 2005.
*296 Jennifer S. Carroll and David Noel (Palm Beach); Randolph W. Adams (Ft. Lauderdale), for appellant.
Craig Blinderman and Arie Mrejen (Ft. Lauderdale), for appellee.
Before LEVY, GERSTEN, and ROTHENBERG, JJ.
PER CURIAM.
Cristina Varela ("Varela"), appeals from a Final Judgment, which declared Carlos Alberto Bernachea ("Bernachea") the sole owner of Merrill Lynch CMA account # XXX-XXXXX ("the CMA account"), despite the fact the account was held as a joint tenancy with a right of survivorship.
Varela and Bernachea are both Argentinean citizens who met in Buenos Aires in late 2000. They developed a romantic relationship and traveled the world together. Bernachea was an attorney in Argentina for over 30 years, but has since retired and invested in American businesses and real estate. In late 2001, at Bernachea's behest, Varela stopped working and moved into his Sunny Isles Beach condominium where the two began living together. While they were a couple, Bernachea paid all of Varela's expenses and showered her with expensive gifts. Varela claimed that she never knew Bernachea was married. Moreover, she claimed Bernachea held her out as his wife. Bernachea disputed Varela's claims and asserted that Varela knew he had a wife, yet contented herself with being his mistress.
Whatever their true arrangement, on January 4, 2002, Bernachea added Varela as a joint tenant with a right of survivorship to his Merrill Lynch CMA account. Mr. Jorge Herrera ("Herrera"), Bernachea's long-time banker, testified that he related the details of the transaction in *297 Spanish and that Bernachea, a former practicing attorney, never stated that he did not understand the legal significance of a joint tenancy with a right of survivorship during the transaction. As a joint owner of the account, Varela received a Visa check card for the account, which she freely used. Herrera and his assistant Ms. Zoraida Rosa ("Rosa") both testified below that they never received any instruction to restrict Varela's access to the account  be it via check or check card.
Bernachea took the position below that Varela's access to the Merrill Lynch account was restricted. Specifically, Bernachea testified that the parties maintained a separate joint account with Southtrust because Varela had check writing privileges for the Southtrust account, but lacked such privileges for the CMA account. Varela, on the other hand, testified that she and Bernachea maintained the separate Southtrust account because a Southtrust branch was conveniently located near their condominium, and they accessed the Southtrust account more frequently, largely to pay bills. Thus, the uncontested testimony established that Varela had the ability to access the CMA funds. Bernachea's testimony reflects his confusion, regarding whether Varela could only access the CMA account via her Visa check card, or could additionally access the account via conventional paper check. It was undisputed, however, that the CMA and Southtrust accounts were joint accounts and that the account funds were supplied by Bernachea.
On October 18, 2002, Bernachea suffered a heart attack in his Sunny Isles condominium. Varela called 911 and accompanied Bernachea to the hospital. While Bernachea was hospitalized, Varela stayed with him until Bernachea's daughters arrived from Argentina and barred Varela from both Bernachea's hospital room and his Sunny Isles condominium. Varela willingly vacated the apartment. On October 25, 2002, Varela visited the Merrill Lynch branch on Brickell Avenue. Once there, Varela wrote a $280,000.00 check on the CMA account and deposited it in her own name in a newly opened Merrill Lynch personal account.
A Brickell branch account executive, Mr. Daniel Diaz ("Diaz"), called the Coral Gables Merrill Lynch branch to ensure that Varela was authorized to write such a check. Diaz spoke with Herrera, who confirmed that Varela was the joint CMA owner and had the ability to write a check up to the account balance. Nevertheless, two weeks after his release from the hospital Bernachea demanded that Merrill Lynch return the $280,000.00. Merrill Lynch complied and transferred the $280,000.00 into the CMA account. Varela contested this transfer, but Merrill Lynch would not return the funds.
Bernachea subsequently sued Varela and Merrill Lynch to settle the ownership status of the CMA account. The Circuit Court held a bench trial on September 1, 2004, and September 9, 2004. Closing arguments were postponed 46 days, until October 26, 2004. Fifty-six days later, on December 22, 2004, the Circuit Court entered Final Judgment for Bernachea. The court reasoned that Bernachea was the sole CMA account owner because he lacked donative intent when he added Varela as a joint account owner. Varela appeals from the Final Judgment. We reverse.
Where the evidence below is largely undisputed and the factual finding by the court is merely an inference drawn from the evidence, substantial competent evidence must support the court's judgment. Florida Bar v. Siegel, 511 So.2d 995, 996 (Fla.1987); Marrone v. Miami Nat'l Bank, 507 So.2d 652 (Fla. 3d DCA 1987); Bowen v. Bowen, 347 So.2d 675 *298 (Fla. 3d DCA 1977). Moreover, the "trial court's application of law to fact is subject to de novo review." Slaughter v. State, 830 So.2d 955, 957 (Fla. 1st DCA 2002). The pertinent facts below were largely uncontested; it is the trial court's application of the factual determinations to the question of whether Bernachea overcame the presumption of a gift that is in dispute on appeal. Accordingly, this Court's review, and application of the facts to the law, is de novo.
When a joint bank account is established with the funds of one person, a gift of the funds is presumed. This presumption may be rebutted only by clear and convincing evidence to the contrary. Spark v. Canny, 88 So.2d 307 (Fla.1956); De Soto v. Guardianship of De Soto, 664 So.2d 66, 67 (Fla. 3d DCA 1995); Winterton v. Kaufmann, 504 So.2d 439, 442 (Fla. 3d DCA 1987). In the instant case, the trial court erroneously found, in the absence of clear and convincing evidence, that Bernachea rebutted Varela's gift presumption.
The trial court premised its finding on Bernachea's claim that he lacked donative intent. The only evidence in support of this claim was Bernachea's own dubious testimony, claiming he misapprehended the significance of a joint tenancy, and only intended for Varela to possess "restricted" account access.[1] However, Herrera, who the court found was a credible witness,[2] testified that he specifically explained the details of a joint tenancy with a right of survivorship in Spanish without any questions from Bernachea, a former attorney. Thus, the court's finding that "[Bernachea] did not understand the significance of the `joint tenancy with right of survivorship'... in the English form" is inconsistent with the facts and testimony that same court found credible. Moreover, Bernachea admitted that, per his wishes, Varela had the ability to make check card purchases and write checks on the CMA account to the account balance.
Clearly, Bernachea did not rebut Varela's gift presumption when he openly admitted that he gave Varela access to their joint account via check card. Contrary to Bernachea's attempt to define a distinction, there is no principled distinction between paper checks and check cards. In fact, the check card's raison d'être is its status as a convenient replacement for paper checks. This modern reality conflicts with the trial court's holding that unfettered account access via check card, represents "restricted status." Moreover, in direct contrast to the court's conclusion, Herrera and Rosa testified that Varela's account access was never restricted. Additionally, both Merrill Lynch branches approved Varela's $280,000.00 check because she was a joint account owner with the ability to write checks up to the account balance.
The Record does not support the trial court's finding, as a matter of law, that Bernachea demonstrated an absence of donative intent. Moreover, Bernachea failed to rebut the presumption that he intended to give Varela an equal interest in their joint bank account. Accordingly, we reverse *299 the Final Judgment and remand with instructions to enter judgment for Varela, awarding her a one-half interest in the October, 25, 2002, CMA account balance.
NOTES
[1] Bernachea was anything but clear and without confusion during his testimony. Bernachea frequently contradicted his own testimony, claiming that Varela was not authorized to write checks on the CMA account, while also claiming Varela was authorized to write checks on the CMA account, but chose not to because she used a check card instead.
[2] The trial court explicitly found Herrera's testimony, which directly conflicted with Bernachea's, credible. Most notably during Herrera's testimony that he was "100 percent sure" he explained the details of the joint account to Bernachea in Spanish.