# Third District Court of Appeal

## State of Florida

Opinion filed May 17, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D21-2039 & 3D22-484
Lower Tribunal No. 16-1123

_____

**Grover L. Larkins, Jr.,**
Appellant,

vs.

**Sergio L. Mendez, etc., et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Milton Hirsch, Judge.

Scott J. Edwards, P.A., and Scott J. Edwards (Boca Raton), for appellant.

Law Offices of Mendez & Mendez, P.A., and Sergio L. Mendez and Daniel J. Mendez, for appellee Sergio L. Mendez; Markowitz, Ringel, Trusty & Hartog, P.A., and Carly S. Weiss; Kula & Associates, P.A., and Elliot B. Kula, for appellee Eric Larkins.

Before EMAS, SCALES and LINDSEY, JJ.

SCALES, J.

In this probate case, appellant Grover L. Larkins, Jr. ("Larkins, Jr."), the oldest son of the decedent, Grover Larkins, Sr. ("Decedent"), appeals an August 2, 2021 probate court order determining that a bank account shared by Decedent and Larkins, Jr., was a convenience account, such that, upon Decedent's death, the balance of the account became an estate asset (the "account order") (Case No. 3D21-2039). Larkins, Jr. also appeals a related order finding Larkins, Jr. in civil contempt of court for his failure to return to the estate the funds from the subject bank account that Larkins, Jr. withdrew shortly following Decedent's death (the "contempt order") (Case No. 3D22-484). The appellee is the personal representative of Decedent's estate, Sergio L. Mendez ("Mendez").

We consolidated the appeals, and we affirm the account order because the probate court's findings are supported by competent, substantial evidence. We reverse the contempt order because it was not the product of independent judicial thought, as required by Perlow v. Berg-Perlow, 875 So. 2d 383 (Fla. 2004), and its progeny.

**I. Relevant Background**

A. The Bank Account and the Dispute

Decedent died intestate in January 2016, his wife having pre-deceased him in 2003. His three sons were the estate's beneficiaries. Among

2

Decedent's assets was a BB&T bank account that Decedent and his wife opened in 1997. In 2006, Decedent added Larkins, Jr., his only son who lived locally, to this bank account. Decedent updated the signature card by checking the box marked "multiple-party account with right of survivorship." Both Decedent and Larkins, Jr. signed the signature card.

During administration of Decedent's estate, a disagreement arose as to whether the BB&T bank account was an estate asset – specifically a convenience account[1] – subject to distribution among the three brothers. While there was a place on the signature card for the account to be designated as a "convenience account," the "convenience account" designation box was not selected. Larkins, Jr. contended that, immediately upon Decedent's death, the proceeds in the account passed directly to him, rather than to the estate, because the bank account was maintained as a joint tenancy with right of survivorship. After his father's death, Larkins, Jr. spent essentially all of the money in the account.

Given the estate disputes, the probate court appointed Mendez as the personal representative. Mendez sought declaratory relief as to the estate's

---

[1] A convenience account is a bank account owned by one person, the principal, who authorizes a second person to make deposits and withdrawals on behalf of the account owner. While operating like a joint account, a convenience account is for the benefit of the principal and does not contain a right of survivorship in the agent. See § 655.80(1), Fla. Stat. (2021).

rights to the bank account and for the imposition of a constructive trust over the account funds.[2]

The probate court conducted a four-day bench trial, and received, *inter alia*, the following evidence: (i) Decedent's son Eric Larkins testified that his father told him the bank account would be split three ways, and that Larkins, Jr. was added to the account only to help his father pay bills and manage finances in his elder years; (ii) Larkins, Jr. testified that he used the bank account funds for his father's care, that the funds in the bank account came from his father, and that he did not withdraw any funds for his personal use during his father's lifetime, depleting the account only after his father died; (iii) Decedent's neighbor testified that he visited Decedent prior to his death, that they discussed the bank account, that Decedent told him that he intended for the account to be split among his three sons after his death, and that the neighbor took contemporaneous notes of this conversation, which were admitted into evidence, and which expressly stated that, as to the account, Larkins, Jr.'s name was "put on for convenience;" and (iv) records of the bank account that showed Larkins, Jr.'s several large withdrawals from the bank account after his father passed away.

---

[2] The case below involved other disputes among the parties, but only the probate court's resolution of the nature of the bank account (and the attendant contempt order) is on appeal.

4

After the trial, the probate court entered a comprehensive August 3, 2021 order, finding that, notwithstanding the bank signature card ostensibly establishing the account as a joint account with a right of survivorship, the bank account was a convenience account and, therefore, an asset of the estate. Larkins, Jr. timely moved for rehearing, which the probate court denied on September 13, 2021.

B. The Civil Contempt Ruling

The probate court's ruling that the account was a convenience account – and therefore an estate asset – obligated Larkins, Jr. to return the funds to the estate, which Larkins, Jr. did not do.  Hence, Eric Larkins filed a motion for an order requiring Larkins, Jr. to return the funds. In granting this motion, the probate court, on September 24, 2021, ordered Larkins, Jr. to identify the location of the funds. Larkins, Jr. responded to this order by: (i) explaining in detail that he had expended all of the funds from the disputed account; and (ii) essentially saying that, given his anticipated inheritance from Decedent, there was no need for the order (suggesting that the amount of the funds he withdrew from the convenience account simply could be deducted from his distribution at a later time).

Eric Larkins responded by filing a motion for entry of a money judgment against his brother. On December 15, 2021, the probate court entered an

order on this motion providing that, unless Larkins, Jr. returned the sum of $314,168.14 (i.e., the amount the probate court found Larkins, Jr. to have withdrawn from the account after Decedent's death) to the personal representative by January 6, 2022, it would set an evidentiary hearing at which Larkins, Jr. would be required to show cause as to why he should not be held in contempt of court. Larkins, Jr. did not submit the funds to the personal representative, so the probate court conducted a show cause hearing on January 19, 2022.

At this hearing, Larkins, Jr. testified as to his assets, his attempts to comply with the probate court order of December 15, 2021, his inquiries into securing a loan in order to comply, and his concern over penalties and fees were he to liquidate certain retirement and investment accounts. Finding that Larkins, Jr. failed to show cause why he should not be held in contempt for failing to return the funds to the estate, the probate court found him in direct civil contempt of court.

The probate court made minimal oral findings at the January 19, 2022 show cause hearing, leaving it to Mendez to draft a proposed order that contained findings of fact, conclusions of law, and the establishment of daily fines. The probate court did not require Mendez to obtain input on the draft order from Larkins, Jr.'s counsel, and Mendez did not do so. On January 20,

6

2022, the probate court signed the proposed order verbatim ten minutes after receiving it. The contempt order contained a purge amount of $314,168.41 and imposed sanctions on Larkins, Jr. in the form of daily and escalating fines, commencing as of the date of the contempt order.

Larkins, Jr. timely moved for rehearing of the contempt order, which the probate court denied on February 22, 2022.

**II. Analysis**

A. The Account Order[3]

Larkins, Jr. first argues that the probate court erred, as a matter of law, by determining that the BB&T bank account, as established by the parties on October 17, 2006, was a convenience account, such that, upon Decedent's death, the proceeds in the account became estate assets. Larkins, Jr. asserts that, based on the signature card, Decedent's bank account was converted on October 17, 2006, to a joint account with a right of survivorship. Larkins, Jr. argues that, because Decedent was offered a "menu" listing the types of account to be created, and because Decedent

---

[3] An appellate court's standard of review of a trial court's findings based on clear and convincing evidence is "whether there exists in the record competent substantial evidence to support the judgment of the trial court." Reid v. Estate of Sonder, 63 So. 3d 7, 10 (Fla. 3d DCA 2011).

(and Larkins, Jr.) selected from that menu the "multiple party account with right of survivorship option" and, despite there being a place on the signature card to do so, did not designate the account as a "convenience account," an *irrebuttable* presumption arose that the account was a joint account with a right of survivorship. In sum, Larkins, Jr. argues that the probate court's inquiry should have been limited to the express intent as manifested by the bank's signature card, and, therefore, by operation of law, the account proceeds became his upon his father's death.

The controlling statute, though – section 655.79 of the Florida Statutes – is clear and unambiguous, as it plainly states that the presumption created by the choice selected on the signature card is *rebuttable* and may be overcome by clear and convincing proof of a contrary intent. In relevant part, the statute reads:

**655.79. Deposits and accounts in two or more names; presumption as to vesting on death**

(1) Unless otherwise expressly provided in a contract, agreement, or signature card executed in connection with the opening or maintenance of an account…a deposit account in the names of two or more persons shall be *presumed* to have been intended by such persons to provide that, upon the death of any one of them, all rights, title, interest, and claim in, to, and in respect of such deposit account . . . vest in the surviving person or persons. . . .

(2) The *presumption* created in this section may be overcome only by proof of fraud or undue influence *or clear and*

8

*convincing proof of a contrary intent.* In the absence of such proof, all rights, title, interest, and claims in, to, and in respect of such deposits and account . . . upon the death of any such person, vest in the surviving person or persons. . . .

§ 655.79, Fla. Stat. (2021) (emphasis added).

Hence, contrary to Larkin, Jr.'s assertion, the probate court's inquiry was not limited to the four corners of the signature card; rather, its inquiry was whether the personal representative established, by clear and convincing evidence, that, notwithstanding the signature card, Decedent's intent was to create a convenience account.[4] Thus, on appeal, our inquiry, is whether there exists competent, substantial evidence of "clear and convincing proof of a contrary intent." Id. Put another way, because the signature card executed in connection with the conversion of the bank account indicated that the account would be a joint account with a right of survivorship, we review the trial record to determine whether there was competent, substantial evidence – of a clear and convincing nature[5] –

---

[4] While the contempt order correctly cites to section 655.79, it appears that, in making its finding, the probate court also included in its analysis a determination that the common law unities of title were not present, such that the account could not be a joint account with a right of survivorship. In Section 655.79, though, the Legislature has expressly defined the ownership presumptions applicable to accounts in two or more names. Thus, it was error, albeit harmless in this case, for the probate court to apply a common law unities of title analysis to its ownership inquiry into the subject account.

supporting the probate court's conclusion that Decedent intended for this account to be a convenience account, rather than a joint account with a right of survivorship. Estate of Sonder, 63 So. 3d at 10; § 655.79(2), Fla. Stat. (2021). We do not reweigh the evidence; in fact, in conducting a competent, substantial evidence inquiry, we look only at the evidence supporting the probate court's conclusion, disregarding all contrary evidence. Edwards, 257 So. 3d at 588.

After conducting the bench trial, the probate court entered a detailed order identifying the evidence relied upon in reaching its conclusion. We reject Larkins, Jr.'s argument that the probate court erred by admitting and relying on parol evidence. Caputo v. Nouskhajian, 871 So. 2d 266, 269 (Fla. 5th DCA 2004) (holding that parol evidence is admissible to overcome the presumption that a decedent's joint bank account is held with a right of survivorship). To ascertain Decedent's intent as to whether the bank account was a convenience account, the probate court appropriately relied upon the extensive testimony of Decedent's son Eric Larkins; the testimony of the Decedent's neighbor who visited Decedent before his death and took

---

[5] Clear and convincing evidence is defined as evidence "that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue." In re Standard Jury Instructions in Civil Cases – Report No. 09-01, 35 So. 3d 666, 726 (Fla. 2010); see Edwards v. State, 257 So. 3d 586, 588 (Fla. 1st DCA 2018).

contemporaneous notes of their conversation; and bank records showing how Larkins, Jr. handled the bank account both before and after his father died.

This properly admitted and considered evidence constitutes clear and convincing proof that Decedent intended, and Larkins, Jr. understood, that the account be a convenience account, rather than a joint account with a right of survivorship, as provided on the October 17, 2006 signature card. We, therefore, affirm the account order.

B. The Contempt Order[6]

Larkins, Jr. next challenges the contempt order. As noted above, the probate court, after a January 19, 2022 show cause hearing, entered an August 20, 2022 order finding Larkins, Jr. in civil contempt of court for failing to follow trial court orders that he return to Decedent's estate $314,168.41, the amount the probate court determined that Larkins, Jr. had withdrawn from the bank account after Decedent's death. This contempt order followed the probate court's order that the bank account was a convenience account and, therefore, an estate asset.

_____

[6] The contempt order is reviewed for an abuse of discretion. Creative Choice Homes, II, Ltd. v. Keystone Guard Servs., Inc., 137 So. 3d 1144, 1146 (Fla. 3d DCA 2014).

11

Our record reflects – and it is undisputed – that at the January 19, 2022 show cause hearing, the probate court: (i) did not make detailed factual findings; (ii) solicited from Mendez what Mendez wished to see in the proposed contempt order; (iii) instructed Mendez to draft and submit the proposed order, allowing Mendez to author the findings of fact and conclusions of law, and to establish the daily fine; (iv) deferred to Mendez whether to include in the proposed order a sixty-day purge provision, as requested by Larkins, Jr.'s' counsel (which was not included); and (v) did not require that Mendez share a draft of the proposed order with Larkins, Jr.'s counsel and, indeed, Mendez did not do so before submission. The probate court then signed the five-page, single-spaced proposed order verbatim ten minutes after receiving it.

We conclude that the probate court improperly delegated the preparation of the contempt order and created the appearance that, in entering the contempt order, the probate court did not exercise independent judgment. Perlow v. Berg-Perlow, 875 So. 2d 383, 390 (Fla. 2004); King v. Farah & Farah, P.A., Case No. 5D23-20, 2023 WL 2795669, at *2 (Fla. 5th DCA Apr. 6, 2023) ("Because the trial judge adopted the law firm's proposed order word for word, without allowing objection by [plaintiff's] counsel, and made no factual findings or legal conclusions to guide the parties in

12

preparing their orders, we conclude that independent judgment does not appear to have been exercised as <u>Perlow</u> and our precedent require.").[7]

      Affirmed in part; reversed in part.

---

[7] Larkins, Jr.'s appeal challenges the contempt order based both on the merits and on the premise that the contempt order is not the product of independent judicial thought. Because of our determination on the latter issue, we do not reach, and express no opinion on, Larkins, Jr.'s merits challenge to the contempt order.